[Filed January 23, 1888.]

# STATE OF OREGON, RESPONDENT, *v.* B. HUFFMAN, APPELLANT.

LARCENY — EVIDENCE. — Appellant was placed on trial for the larceny of a steer. The evidence showed that his employer ordered him to go and get a certain steer belonging to him, then on the range, and take it to O., to whom he had sold it; that he found the steer in question where he had been directed to get the one belonging to his employer; that he drove it to O.'s slaughter pen and left it there. O. testified that he butchered the steer, and after spreading the hide on the ground he saw the letters "S. G." branded on the hips; that he left the hide in that condition, with the head of the animal near it, when he left the place on the evening the animal was killed. On being asked what condition he found things in the next morning, he answered, over proper objections from the defendant's counsel, that "the brand was cut out from the hide, and the head was about one hundred yards from where he left it." *Held,* there being no evidence tending to connect defendant with these acts, it was incompetent to show the mutilation of the hide after the animal was delivered to O.

SAME—INSTRUCTION—BURDEN OF PROOF.—The defendant claimed that he took the animal—for the larceny of which he stood indicted—by order of his employer, and that he believed it to be the property of his employer. The court instructed the jury that the defendant "must establish that he took the steer under claim of right, color of title, or by mistake." *Held,* error, because it placed the burden of proof on the defendant.

WITNESS—EXAMINATION OF—JUROR.—On a former trial of this cause, S., a co-defendant, was acquitted, the jury disagreeing as to the appellant herein. S. was a witness in said former trial, and pending the re-trial of the appellant, S. died. H. was a juror on the first trial, and in the second trial was called to prove the statements sworn to by S. in the first trial. On cross-examination the court allowed the district attorney to ask the witness, under proper objections, if he did not hang the first jury for thirty-six hours, and other questions touching his conduct as a juror in said cause. *Held,* error.

INSTRUCTIONS.—The court has no right to direct as to the credence the jury shall give to any evidence submitted to them.

APPEAL from Umatilla County.    Reversed.

*Tustin & Leasure,* for Appellant.

*M. D. Clifford,* District Attorney, and *Ramsey & Bingham,* for the State.

THAYER, J.—This appeal comes here from a judgment of conviction of the appellant for the larceny of a steer, the property of Samuel George, obtained in the Circuit Court for the county of Umatilla.    He was indicted in said court by the grand jury of Umatilla County for said crime jointly with one O. H. Stanley.    A trial was had upon the said indictment, which resulted in the acquittal of Stanley, and a disagreement of the jury as to the guilt of appellant.    At a subsequent term of the said court the appellant was again put upon his trial, was found guilty, and the judgment of conviction entered thereon, from which this appeal is taken.    The appellant assigned several grounds of error in his notice of appeal, which have been considered by the court and will be referred to herein.

The first ground of error is the admission of the testimony of Edward Olcott as to his finding the brand cut out of the hide of the animal after it had been butchered.    The evidence showed that the appellant was working for O. H. Stanley, who was his father-in-law; that Stanley was the owner of quite a number of cattle upon the range, including a white steer very similar to the

one alleged to have been stolen; that he made arrangements with appellant to go and get his steer, then running with his milch cows, at what was known as Smith's place in Jack's Cañon, and deliver it to said Olcott, to whom he had sold it; that in pursuance thereof, appellant went and got the steer in question, under, as he claimed, a mistake, which claim the evidence seems strongly to corroborate; that he found the steer at or near the place from which he was directed to get him; took him along the public highway in the daytime to Olcott's slaughter pen and left him there, and went to town, where he found Olcott and informed him of the fact; that Olcott paid him part of the money for the steer, which he paid over to Stanley; that when appellant informed Olcott that he had left the steer at the pen, the latter went down to the pen to see the animal and locked the gate of the pen; that there was no other animal in the pen. The next day he saw the animal again in the pen, and on the evening of the third day after the animal was put in the pen, he killed and skinned it. After butchering the animal he noticed the head and saw that there was a split in the right ear. He then spread the hide out on the ground and could see the letters " S. G." branded on the right hip. He left the hide spread out on the ground with the head near it, and went back to his shop. That he went to the pen again the next morning. The witness was thereupon asked by the district attorney in what condition he found things the next morning. The appellant's counsel objected to this evidence. The court overruled the objection, and an exception was taken to the ruling. The witness, in answer to the question, stated "that the beef was hanging up in the shop where he left it the evening before, but the head he did not see, and the hide was thrown together 'like' from where he left it. That he spread it out and saw the brand was cut out of it; that he hauled the beef up to the market and went back afterwards and found the head down near the stream about a hundred yards from where he left it; that there was a piece of the hide cut out about a foot square. Would judge the animal worth $26.60, the amount he paid for it." No testimony appears to have been given implicating the appellant with the cutting of the hide as

mentioned, nor any circumstance proved indicating that he did it. Whether he did do it or not seems to have been left wholly to inference and conjecture. This presents the first ground of error relied upon by the appellant's counsel.

The next alleged error consisted in the court permitting the district attorney to interrogate one George W. Hanna, concerning the following matters upon which he was examined. Hanna was a juror upon the former trial, in which Stanley was acquitted and the disagreement as to appellant was had. Upon that trial Stanley testified as a witness and had since died, and Hanna having been on that jury and heard Stanley's testimony was called by the appellants as a witness to prove what the deceased testified to on said occasion.

After the examination of the witness in chief was concluded, which was confined to the proof of Stanley's testimony, the district attorney asked him a number of questions regarding the deliberations of the former jury, among which were the following: How many men were on that jury? Did the other eleven remember the testimony as you did? Did they agree with you? Is it not a fact that you hung that jury thirty-six hours? How long did you hang it? referring to the jury. How long were you out on that jury? How long did you hold that jury against the eleven? As a matter of fact, did you not go into the sheriff's office and get your overcoat and shoes and go back there determined to stay? Here the court said to the witness, "You may state all that you did and what your recollection is in regard to it," and then said to the district attorney: "Ask him any questions you please to test his memory concerning that case."

The examination proceeded in this manner to a considerable length, the attorney for the appellant protesting all the time against it, and after the testimony upon that point was concluded moved the court to strike it out, which was refused, and an exception taken to the ruling. The other grounds of error relate to certain instructions given by the court to the jury, and to the refusal to give instructions asked by the appellant's counsel.

The following are the instructions given, and those refused referred to: "The mere assertion of this defendant Huffman, or

O. H. Stanley, who was indicted with this defendant Huffman, or the assertions of said Stanley and Brady Huffman made at or near the time of the taking, or since then, that they, or either of them, were the owners of the property named in the indictment, or that the taking of the steer named in the indictment was through mistake, is not sufficient to establish such fact. There must be, or ought to be, some other evidence or circumstance corroborative to establish that fact." "It is not necessary that the evidence establish that the animal named in the indictment was taken under claim of right or color of title, or by mistake beyond reasonable doubt; but it is sufficient if either one of such conditions be shown by a preponderance of the testimony, or by the weight of the testimony, *and this must be shown by the defendant.*"

The appellant's counsel requested the court to give the following instructions: "The fact that the brand upon the hide was mutilated, and the head and ears removed after the animal was slaughtered by Olcott, is no evidence connecting this defendant with the crime charged, unless there is evidence connecting the defendant with such mutilation of the hide or the removal of the head and ears." Which instruction the court refused to give to the jury, but in lieu and instead thereof, gave the following instruction: "The fact that the brand upon the hide was mutilated, and the head and ears removed after the animal was slaughtered by Olcott, is a fact and circumstance that you may consider. It is for you to say from all the facts and circumstances whether the defendant or Stanley have been connected with or had any connection with the mutilation of the head or hide."

During his instructions the court instructed the jury as follows: "If the jury believe from the evidence that the taking, if any, by the defendant was an open taking, and that in taking the same was over and along a public road or in sight of other persons, this is a circumstance that you may consider in determining what the intention of the taker was, or whether there was any larceny intended. But the mere fact that the property was taken openly or in daylight is not conclusive, for it may be that the fact of openly taking certain kinds of property may be used

simply as a cloak or trick, or it may be the result of recklessness embolden by like successes, or it may be that the very cloak that the law throws around innocent people has been prostituted by the person committing the larceny."

The question arising upon the first alleged error is, whether it was competent to show the mutilation of the hide after the animal was delivered to Olcott and butchered, without some proof being made or circumstances shown tending to implicate the appellant with the act. The taking of the animal under the circumstances disclosed by the evidence was not sufficient of itself to constitute larceny. It was necessary to establish the *animo furandi* or the law will adjudge the kind of taking referred to only a trespass. (*Littlejohn* v. *State,* 57 Miss. 273; *Stuart* v. *People,* 73 Ill. 20.) Even where a person knowingly takes and appropriates the property of another, it is not necessarily a larceny; the character of the taking may be such as to rebut any felonious intent. (*McDaniels* v. *State,* 33 Tex. 419.)

If it had been found that the appellant did the mutilation of the hide and removed the head, it would have been a contingent circumstance in the proof to establish a felonious intent. It would have been evidence from which the jury would have been authorized to infer that he took the animal for the purpose of stealing it. It would then, however, have only been an inference, which, as defined by the Code, is a deduction that the reason of the jury makes from the facts proved without an express direction of law to that effect. (Code, 1874, § 761.) It would appear as if the court entertained the view that the jury had the right to infer that the appellant destroyed the brand, from the fact that he took and delivered the animal to Olcott, and then I suppose infer from that, that he was guilty of the crime charged. If that were correct, there would be no limit to the extent to which deductions could be drawn from, a circumstance, however, indifferent in itself. If the appellant turned the steer over to Olcott and relinquished control over the animal entirely, and the latter had absolute and complete possession of it when the act was committed, it could hardly be inferred from the fact of his taking and delivering the steer to Olcott, originally, under the

circumstances shown by the proof, that he did the mutilation. If the appellant was guilty of larceny of the steer, then he is the one most probably who abstracted the brand. Having stolen the animal it might reasonably be inferred that he cut the brand out of the hide in order to conceal the evidence of his guilt. And I do not see how the inference can be made without *presuming* him guilty of the theft charged. The fact of his having taken the steer to Olcott, from which the inference was allowed to be drawn, was too remote. The law is too tender of human liberty to admit of such proof. A party charged with a felony must be proved guilty, either by direct evidence or by a complete chain of circumstances inconsistent with any other reasonable hypothesis. Inferences must be deduced from facts established by clear and positive proof, and the latter must be of such a character as to justify the former.

In the opinion of this court, the inference that the appellant cut the brand out of the hide, and removed the steer's head, was not properly deducible from the general fact, that he took and delivered the steer to Olcott in the manner shown by the evidence. Nor was the proof of the hide having been mutilated, and the animal's head removed, apparently for the purpose of concealing it, competent, unless the State adduced evidence tending directly to implicate the appellant with the act. The exception to the proof, upon that ground, was therefore well taken. The exception to the pretended cross-examination of the witness Hanna was also well taken. The district attorney had no right to inquire of said witness whether he did not hang the jury for thirty-six hours, nor how long he hung the jury, nor anything relating to the deliberations of the jury. The evidence was no more competent upon the pretended cross-examination, than it would have been if the witness had been called on behalf of the State, and the inquiries made directly.

The memory of a witness may be tested upon cross-examination, in reference to matters he has testified to in chief, and his interest and state of feelings toward the adverse party be inquired into; but no such latitude as that allowed in this case should have been permitted. It disclosed how the former jury

stood in regard to the guilt of the appellant, and was calculated to influence the jury who were then trying the question; and the claim that it was pursued in order to test the witness' recollection, and to ascertain the state of his mind towards the appellant, was *far-fetched;* it appears too much like a pretense. The witness was a proper person to be called to prove what Stanley testified to upon the former trial, and his having been called as a witness for that purpose did not give the district attorney any right to question his acts as a juror upon the former trial.

If his testimony was incorrect, the other eleven jurors and the judge who presided at that trial could have been called to show its incorrectness, and he could have been questioned as to his interest, or as to the state of his feelings toward the appellant without going into the matters mentioned. That the witness when on the former jury stood out against the other eleven, and was in favor of an acquittal of the appellant, proved nothing to his discredit. He was sworn to try the case according to the law and evidence, and if he was not able to view the matter as the balance of the jury did, it was his *duty* to disagree. He was not compelled to believe the accused guilty because the other jurors did. He was entitled to follow his own convictions as to that matter. What inference had the jury a right to draw from the fact that the witness did hang the jury, as it is termed, on the previous trial? Can it be claimed that it tended to prove that he was prejudiced or biased to an extent that would influence his testimony? If it could properly be so claimed, then the proof could be made a legitimate basis for such deduction. But I hardly think any attorney who considers the question will so conclude.

The performance of jury services is not a pleasant duty at best, and if persons who are required to discharge it are liable to be questioned afterwards as to how they voted in the jury-room, for the purpose of reaching a conclusion, in order to lay a foundation to impeach their testimony as witnesses, and lawyers allowed to animadvert upon their motives, the burden will be rendered more distasteful still, especially to those who are sensitive and conscientious. Matters of that character ought to be privileged from inquiry for any such purpose.

The instructions excepted to are all faulty.    The first one, in the order in which I have arranged them herein, that "the mere assertion of this defendant Huffman, or O. H. Stanley, who was indicted with this defendant Huffman, or the assertions of said Stanley and Brady Huffman, made at or near the time of the taking, or since then, that they, or either of them, were the owners of the property named in the indictment, or that the taking of the steer named in the indictment was through mistake, is not sufficient to establish such fact; there must, or ought to be, some other evidence or circumstance corroborative, to establish that fact," was improperly given.    The matter therein charged presented the facts of the case to the jury, which the court had no right to do.    (Code, 1874, § 198.)    After the testimony of the "assertions" referred to in said instructions was admitted in evidence, it became the province of the jury to judge as to its effects.    The court had no right then to comment upon it.    If the testimony tended to prove the fact referred to, it belonged to the jury to determine whether or not it was sufficient for that purpose.

The court, when the testimony was offered, had the right to decide whether or not it tended to prove the fact, and when it decided that it was admissible upon that ground, all questions as to its effect passed beyond the court's control.    Nothing remained for it to do, but to state to the jury the matters of law which it deemed necessary for their information in giving their verdict, and inform them that they were the exclusive judges of all questions of fact.    The jury might, if the court had not interfered with them, have found from the "assertions" that the appellant took the steer and drove and delivered it to Olcott through mistake; and it was for the purpose of preventing such interference that the said section of the Code was adopted.    That provision is mandatory in its terms and must be observed.    If the court desired to state to the jury any matter of law applicable to any particular facts which might be found by the jury, it could have stated a hypothetical finding and have informed them what the law would be in regard thereto.    But it is effectually barred out of the jury-box.    It has no right to direct as to the

weight the jury shall give to any evidence submitted to them, or instruct them in other respects except as provided in section 835 of the Code of 1874. The next one of said instructions, to the effect that the appellant must establish that he took the steer under claim of right, color of title, or by mistake, was all wrong. No conviction of a person charged with a crime can be had in this State, unless he is proved guilty beyond a reasonable doubt. And it matters not whether such doubt arises out of some defect or weakness in the evidence introduced upon the part of the prosecution, or is created by proof given upon the part of the accused.

The burden of proof is upon the former from the beginning to the end of the trial. It is never changed. There are some cases in which the accused has the right to interpose a special defense, and which he is required to prove in order to avail himself of the benefit of, but they relate to extrinsic matters. Proof given upon the part of the accused, tending to disprove the charges made against him, is as effectual to create a reasonable doubt, as an infirmity in the proof on the part of the prosecution. When all the evidence in the case, both *pro* and *con*, is submitted to the trial jury, the ultimate question for them to determine is, whether in view of all the facts shown the accused is proven guilty. If the evidence upon the part of the prosecution is inconclusive in some particular, either on account of its inherent weakness, or of its having been rendered so in consequence of contradictory evidence brought forward by the accused, and such a doubt as to the latter's guilt is thereby raised in the minds of the jury as would cause them to hesitate to decide grave and important affairs of their own, they should certainly render a verdict of acquittal.

The Circuit Court in this case, in giving the said instruction, completely reversed the rule we have here indicated. By the tenor of the instructions the appellant was required to prove his innocence in order to entitle himself to an acquittal. He had to establish that the animal named in the indictment was "taken under claim of right, or color of title, or by mistake." Such a character of taking would of course exonerate him from the charge of larceny, as it would disprove any felonious intent.

The court, however, very graciously held that he need not establish the fact beyond a reasonable doubt.    The language of the court was as follows: "But it is sufficient if either one of such conditions be shown by a preponderance of testimony, or by the weight of testimony; and this must be shown by the defendant. I have no doubt but that the people of Umatilla County and vicinity have been greatly harassed and annoyed by a set of cattle thieves, who have for a long time infested that section of country; and that they have become highly exasperated on account of the frequent depredations committed upon their stock.    Their condition of temper, doubtless, has become such that they are inclined to exact of a person, who has interfered in any manner with another's cattle, proof that he did not intend to commit larceny.    The sentiment has grown out of a determination not to be despoiled of their property.    But the State cannot afford to have a rule, adopted in the interest of humanity centuries ago as a bulwark against cruelty and oppression, abrogated even to save the loss of all the white yearling steers in the country."

The next exception was to the refusal of the court to charge that the fact that the brand upon the hide was mutilated, and the head and ears removed after the animal was slaughtered by Olcott, was no evidence connecting the appellant with the crime charged, unless there was evidence connecting him with the mutilation of the hide, or removal of the head and ears.

The court, after refusing to give the instructions as requested, charged the jury that the fact that the hide was mutilated and head removed after the animal was slaughtered by Olcott was a fact and circumstance that the jury might consider, and was for them to say from all the facts and circumstances whether the appellant or Stanley had any connection with the affair.    What we have already said in regard to the admissibility of the evidence as to the condition in which Olcott, when he returned to the slaughter pen, found things there, is applicable to the questions arising on this exception, and nothing further need be added.

The next and last exception is to the instruction given as to

the manner of the taking and delivery of the steer. This instruction would have been correct if the court had stopped at the word "intended" and before the word "but." The part of the instruction between and including the words "but" and "larceny" at the end of the instruction is open to the same objection made to the first instruction excepted to. Our Code, it will be noticed, strictly limits trial courts in giving instructions to the statement of matters of law. In cases like the one under consideration, the court can properly state but little more than to define the crime and explain the meaning of a reasonable doubt. The questions involved in such cases are almost exclusively questions of fact, and if a trial judge is not exceedingly careful in charging the jury, he will go beyond the boundary the Code has established on that subject, and thereby commit error.

The judgment of conviction appealed from will be reversed, and the case remanded to the court below for a new trial.