[Criminal No. 354.   Filed June 23, 1914.]

[141 Pac. 713.]

THOMAS J. SISSON, Appellant, v. STATE, Respondent.

1. LARCENY—OFFENSES—ELEMENTS.—Where accused took a horse under the honest belief that it was his right to do so, he is not guilty of larceny, though the horse belonged to another, for the felonious intent was absent.

[As to what constitutes larceny, see notes in 57 Am. Dec. 271; 88 Am. St. Rep. 559.   As to retention of property taken by mistake, see note in Ann. Cas. 1912B, 340.]

2. LARCENY—EVIDENCE—BURDEN OF PROOF.—Under Penal Code of 1913, section 1036, providing that a defendant in a criminal action is presumed to be innocent until the contrary is shown, and should be acquitted in the case of a reasonable doubt, whether guilt is shown, it is not necessary for one accused of larceny to satisfy the jury

that he took the property under a *bona fide* belief that he was entitled to do so, but the burden is on the prosecution to establish his guilt beyond a reasonable doubt.

3. CRIMINAL LAW—INSTRUCTIONS—BURDEN OF PROOF.—In a prosecution for horse theft, an instruction that if accused went after the horse alleged to have been stolen in response to a letter from another informing him that he had caught the horse, and accused honestly believed the animal belonged to his principal, he should be acquitted is improper in placing upon accused the burden of proving his *bona fides* and relieving the state from the burden of proving his guilt beyond a reasonable doubt.

4. CRIMINAL LAW—APPEAL—HARMLESS ERROR.—An accused cannot complain that an instruction, given at his request, cast upon him the burden of proof instead of the state.

5. CRIMINAL LAW—TRIAL—INSTRUCTIONS.—Under Penal Code, section 1033, subdivision 6, declaring that the court may charge the jury on any pertinent issue, and must do so if requested by either party, the failure of the court to charge the jury on a matter of defense, when no charge was requested, cannot be complained of on appeal.

APPEAL from a judgment of the Superior Court of the County of Graham. A. G. McAlister, Judge. Affirmed.

The facts are stated in the opinion.

Mr. W. K. Dial, for Appellant.

Mr. G. P. Bullard, Attorney General, and Mr. Leslie C. Hardy, Assistant Attorney General, for Respondent.

FRANKLIN, C. J.—Appellant was convicted of the crime of grand larceny and sentenced to serve a term in the state prison. On application by the appellant, the learned judge of the trial court granted a certificate of probable casue for an appeal to this court. The case is now here for review on an appeal from the judgment and an order denying appellant's motion for a new trial. The charge in the information is grounded on the taking of a gelding alleged to be the property of one C. G. 10, an Apache Indian. The taking of the gelding is not denied, but the felonious intent of the defendant in taking the animal was the decisive issue in the trial of the case.

The defendant claimed that he took the animal having an honest belief that he had a right to take it. Though there

was a decided conflict in the evidence on this phase of the matter, a brief *résumé* of the testimony in behalf of defendant discloses: That he and one Pete Baca had purchased some horses from the Indians near the San Carlos reservation. That the prosecuting witness and Pete Baca each owned a buckskin gelding which in general appearance corresponded one with the other, and both animals seem to have strayed off, and each of the owners was making efforts to find his horse. The animal described in the information, it also appears, was found by one Joe Hinton at his corral, where he was pumping water. Hinton thought the horse found at his corral belonged to appellant and Baca, because he knew they had purchased some Indian horses, and this horse resembled one that they had purchased. Hinton advised appellant by letter that he had found his horse and had him in the corral, and requested appellant to come and get the animal. Appellant showed the letter to Baca, and the latter stated that the horse found was his horse, one that was purchased by Baca when he and appellant were at the reservation, but at a time when appellant was not present. Baca asked appellant to go to Hinton's place and get the horse for him, stating that he would pay appellant for the trouble of doing so. Appellant, believing the animal to be the property of Baca, went to Hinton's place and openly took the animal from the corral for the purpose of delivering it to the one he believed to be the owner thereof. This, in substance, is the explanation which appellant relied on for his defense to the charge.

If the appellant did in fact take the property having an honest belief as to his right to take it, the crime charged would of course lack the essential ingredient of felonious intent. It was thus within the province of the jury to determine, from all the evidence in the case, the *bona fides* of such claim of right. The court instructed the jury as follows:

"You are instructed that if you believe from the evidence that the defendant, Thomas J. Sisson, went after the animal alleged to have been stolen upon receipt of a letter from Joe Hinton, informing him that he had caught him and had him in his possession, and that he went after the animal to deliver him to Pete Baca, as requested by Baca, and that he honestly believed that the animal belonged to Baca, then it is your duty to acquit him."

The infirmity of this instruction is at once apparent. It places a burden upon the defendant in a criminal prosecution that the law does not authorize.

"A defendant in a criminal action is presumed to be innocent until the contrary be proved, and, in case of a reasonable doubt whether his guilt be satisfactorily shown, he is entitled to be acquitted." Section 1036, Ariz. Pen. Code 1913.

"It is not necessary for the defendant to satisfy the jury that he was in fact the owner of the goods alleged to have been stolen, or that he took them under a *bona fide* claim of right. The burden is on the prosecution to establish the guilt of the defendant beyond a reasonable doubt, and this requirement is not satisfied, if the evidence leaves it in doubt whether or not the property taken was the defendant's, or whether the defendant honestly believed either that he was the owner or that he had a right to the possession." 18 Am. & Eng. Ency. of Law, 2d ed., p. 525.

"The charge given by the court, predicated on defendant's belief that he had a right to take the same, should have been given without imposing upon him the burden of proof; that is, the jury should have been instructed in connection with said charge, if they had a reasonable doubt whether or not the defendant believed he had a right to take the animal, they should acquit." *Reese* v. *State,* 43 Tex. Cr. 539, 67 S. W. 325.

In the case of *State* v. *Weckert,* 17 S. D. 202, 2 Ann. Cas. 191, 95 N. W. 924, the following instruction was before the court:

"In this case I charge you, as a matter of law, that if you are satisfied from the evidence that this defendant, Joseph Weckert, took the property in question from the corral . . . under an honest belief of ownership, although mistaken in this belief, then you would not be warranted in convicting this defendant, and it would be your duty, as jurors, to acquit him. In other words, where a defendant charged with larceny tells the jury, or where the jury becomes satisfied with the evidence, that the original taking of the property was made under an honest or mistaken claim of right to the property, it is the duty of the jury to acquit him, and, before you can convict the defendant in this case, the state must satisfy you

from the evidence, beyond a reasonable doubt, that the defendant, by fraud or stealth, and with intent to deprive the owner of the property thereof, and knowing the same not to be his, took the property in the manner and form charged in the indictment.''

The court commented on this instruction as follows:

''The accused contends that by this charge the court clearly instructed the jury that the burden was upon the accused of satisfying them that the taking of the horse by him was under the honest claim of ownership. We are of the opinion that the contention of counsel for the accused is correct. While it is true that in the latter part of the instruction the court does charge the jury that, before they can convict the defendant, the state must satisfy them of his guilt beyond a reasonable doubt, yet the former part of the instruction was not withdrawn from the jury, in which they were clearly instructed in effect that the burden was upon the accused to satisfy them that he took the property in question under an honest belief of ownership, although mistaken in that belief. This instruction was clearly erroneous, and in conflict with the provisions of section 7376, Compiled Laws of 1887, which reads as follows: 'A defendant in a criminal action is presumed to be innocent until the contrary is proved, and, in case of a reasonable doubt as to whether his guilt is satisfactorily shown, he is entitled to be acquitted.' ''

See, also, *State* v. *Huffman*, 16 Or. 15, 16 Pac. 640; *State* v. *Grinstead*, 62 Kan. 593, 64 Pac. 49; *Black* v. *State*, 83 Ala. 81, 3 Am. St. Rep. 691, 3 South. 814; *Evans* v. *State*, 15 Tex. App. 31; *Higginbotham* v. *State*, 42 Fla. 573, 89 Am. St. Rep. 237, 29 South. 410; *Johnson* v. *United States*, 2 Okl. Cr. 16, 99 Pac. 1022; 25 Cyc. 49.

The authorities are abundant, and, we believe, substantially uniform, to the effect that the burden of proof is not upon the defendant charged with the crime of grand larceny to satisfy the jury that the taking was under a *bona fide* claim of right; it being sufficient to entitle him to an acquittal if the jury have a reasonable doubt arising from all the evidence in the case as to whether the defendant took the property having such an honest belief as to his right to take it. In other words, the felonious intent being an essential ingredient of the crime charged, if the taking is admitted, or proved

beyond a reasonable doubt, nevertheless, if the jury entertain a reasonable doubt of the felonious intent of the defendant in taking the property, the jury should give him the benefit of such reasonable doubt and acquit him. And it matters not whether such doubt arises out of the evidence introduced on the part of the prosecution, or is created by the evidence upon the part of the accused. Counsel for appellant has pressed this matter upon us with much learning and force, and we have followed his effort to the period of conviction that the lower court, in giving the instruction complained of, committed error.

But is it reversible error? The matter has burst into a very flame, but must again die down into smoke, and the pity of it is that it is always more attractive to see smoke burst into flame than to observe flame smother into smoke. We say the instruction is erroneous, but that this case must not be reversed on account of the error. Why? Because, though not called to our attention by either party, we have just discovered by a scrutiny of the record that the instruction criticised was given by special request of the defendant and in the precise words which he employed. The policy of reversing cases at the instance of a defendant in a criminal cause because of error occurring by his invitation and request would, indeed, be unwise, for it must readily occur to anyone that the pursuit of such a course could not be fraught otherwise than with most mischievous consequences in the administration of the law. A party by clever and ingenious argument might in the hurry of a trial persuade a court to give an instruction which, upon a critical examination, would be found not good in point of law. The court should, of course, refuse to give an erroneous instruction, but, if one such is given, the party urging it may not be heard in this court to decry a result fashioned by his own handiwork. The toleration of such a procedure would tend often, perhaps, to encourage parties to strive in an endeavor to catch the court, and thus predicate a foundation for reversible error.

It requires some assurance to urge upon this court to reverse a cause for an error urged and invited by the party complaining of it, but we must accentuate in this instance that such a course will not be permitted to endure.

The defendant assigns as error the omission of the court to give special instructions upon particular features of the case, although he did not request any one which he claims was omitted, but should have been given. His contention being in substance that it was a duty of the court imposed by the law to give specific instructions upon all the defensive hypothesis raised by the evidence, whether requested to do so or not. Such is not the law in this jurisdiction. But we are cited to cases from Texas to sustain the contention. The Texas cases are not in point, however, for they are governed by a mandatory requirement of the statute. In Texas the judge must charge the jury and must "distinctly set forth the law applicable to the case. . . . whether asked or not." Tex. Crim. Code 1895, art. 715. The provision is quite different from that of Arizona. After prescribing the order in which the trial must proceed, subdivision 6 of section 1033, Penal Code of Arizona of 1913, says:

"The judge may then charge the jury and must do so on any points pertinent to the issue, if requested by either party; and he shall declare the law."

Commenting on the Texas statute, Mr. Thompson says:

"The doubtful policy of mandatory statutes of this kind will readily occur to every mind. The mere forgetfulness of the judge to instruct the jury as to the law relating to some defensive hypothesis furnished by the evidence of the accused, or as to the law furnished by the evidence of the state, will work a reversal, although the failure so to instruct the jury may have had no influence whatever on the merits. The doubtful policy of such a principle is found in the numerous reversals which have taken place in Texas, where it is upheld with its greatest strictness, for mere nondirection, in cases where able counsel have sat by and intentionally omitted to call the attention of the judge to the matter in respect of which the instruction should have been given. . . . There may be good reason for such a rule, where the prisoner is not assisted by counsel, or where there is reason to believe, on an inspection of the record, that the jury may have made a mistake in matter of law; but in other cases its results must be mischievous rather than salutary." Thompson on Trials, sec. 2340.

It is remarked in an Indiana case that:

"The position seems to be that if, by oversight, mistake or accident, any point is omitted by the court in its instructions, the omission is fatal, whether the attention of the court may have been called to the matter or not. In other words, that the party and his counsel, knowing that the court is omitting to instruct the jury upon some point in the case, may remain quiet, and, without asking for further instructions, procure a reversal of the judgment on account of. such omissions. Such a practice would be wrong in theory and mischievous in results." *Powers* v. *State,* 87 Ind. 144.

At common law the review by writ of error was granted only on the fiat of the attorney general, or where it was allowed on a question of law reserved by the trial judge for the consideration of the court for crown cases reserved.

While the right of review thus restricted was rarely exercised, nevertheless, according to the principles of common-law procedure, no conviction in a criminal case was reversed for mere nondirection, where no instructions were requested by accused, unless the record disclosed that the jurors were mistaken in a matter of law. The question presented, then, rests on the exigency of a statute, and for this reason there are found directly opposing conclusions among the different ctates.

The judge may charge the jury and must do so on any points pertinent to the issue, if requested by either party; and he shall declare the law. Such is the statutory prescription on the subject in Arizona. Unless requested by either party, it is optional with the court to instruct or not; but, if either party does request instructions on any points pertinent to the issue, the judge has no option in the matter, but he must declare the law. In fine, mere nondirection, partial or total, as distinguished from misdirection, is not ground for a new trial, unless specific instructions, good in point of law and appropriate to the evidence, were requested and refused. See Thompson on Trials, and the numerous cases cited under sec. 2341.

Ordinarily, the trial judge will and should consider it to be his duty to, give such instructions to the jury in matters of law as, in his judgment, may be best calculated to aid and assist them in forming their verdict, and such charge should embrace the general features of the case to be presented, in-

XVI Ariz.—12

cluding a definition of the offense, and generally indicating what is essential to establish the same. . The court is not required to give instructions upon any particular matters, unless his attention is called to them and they are particularly requested, when, if they are pertinent to the issue and good in point of law, the judge shall so declare the law. In short, the sin of voluntary omission is less grievous than that of voluntary commission, in the matter of giving instructions to the jury. A party charged with crime is, by the wisdom and leniency of the law, surrounded with every safeguard and clothed with every presumption in favor of his innocence, and the procedure governing his trial is so regulated and attuned that he may at every step assert his rights to a fair and impartial hearing, and demand that such rights be fully respected and conserved, and if he is not able, by reason of poverty, to secure counsel himself, upon application to the court, counsel learned in the law will be assigned to aid him in his defense.

It is not our purpose to move in the direction of multiplying new trials and reversals on account of nondirection, when an instruction pertinent to the law and applicable to any hypothesis presented by the evidence must, upon request by either party, be given. The duty in such a matter does not devolve entirely upon the court, but calls upon the parties concerned for active participation.

Counsel in a cause have their duties and responsibilities. They come into court familiar with their cases, and are presumed to have studied them, and to be familiar with the facts as well as the law which is applicable to such facts. Upon their part attentive interest should be given to the charge of the judge, and the court is entitled to, and should have, the benefit of the learning and knowledge of the law and the facts possessed by counsel. In the absence of a request for specific instructions, good in point of law and pertinent to the issue, a party will not be heard to complain in the appellate court for mere nondirection—for an omission which would not have occurred except for his own indifference or lack of diligence.

Judgment affirmed.

CUNNINGHAM and ROSS, JJ., concur.

---

NOTE.—On the question of larceny or embezzlement as affected by belief in right to property taken, see note in 41 L. R. A. (N. S.) 549.