Argued January 31, affirmed March 21, 1922.

## STATE v. ROSASCO.

(205 Pac. 290.)

**Intoxicating Liquors—Intent not Involved in Unlawful Possession and Need not be Alleged.**

1. Criminal intent is not involved in the crime of unlawful possession of intoxicating liquor under Section 2224—1, Or. L., and it is unnecessary to allege that liquor was possessed for beverage purposes, in view of sections 2224—4, 2224—5, 2224—58.

Intoxicating Liquors—Burden on Defendant to Show That He was
    Manufacturing Vinegar Instead of Wine.

2. In a prosecution under Section 2224—1, Or. L., for having
intoxicating liquor in possession, the burden was upon defendant to
show that he came within the exception stated in section 2224—5,
permitting the manufacture of vinegar, etc., in view of section
2224—58.

Indictment and Information—Indictment for Statutory Offense must
    Inform Defendant of Nature and Cause of Accusation.

3. No indictment founded upon a statute can be good which does
not contain sufficient allegations to inform the defendant of the
nature and cause of the accusation against him, under Const., Article
I, Section 11.

Criminal Law—Indictment and Information—Necessity of Negativing
    Exceptions Depends on Position in Statute; Where Exception is
    not in Enacting Clause, It must be Proved by Defendant.

4. If an exception is in the enacting clause of a penal statute,
an indictment must show that the act alleged to have been com-
mitted by the accused is not within the exception; but, when the
exception is in a subsequent clause of the statute, it is a matter of
defense and must be shown by the accused.

Indictment and Information — Provisos and Exceptions Treated
    Together.

5. Provisos and exceptions in a penal statute, though distinct in
meaning, are generally treated together in the discussion of criminal
pleading.

Indictment and Information—"Enacting Clause" of Penal Statute
    Within Rule as to Pleading and Proof.

6. The term "enacting clause," as used in the rule that an indict-
ment must show and state that the act alleged to have been com-
mitted by accused is not within the exception appearing in the
enacting clause, means all parts of the statute which defines the
offense.

Criminal Law — Presumption of Innocence Stays With Defendant
    Throughout Trial—Defendant has Burden of Proving Statutory
    Exception—State must Prove Guilt Beyond Reasonable Doubt.

7. The presumption of innocence is a substantial part of the law
that remains with the defendant from the beginning of the trial
until a verdict is found, and it devolves upon the prosecution to
prove guilt by evidence to the satisfaction of the jury beyond a
reasonable doubt, and the burden of proof is never shifted from the
state to the defendant; but this does not mean that, when a de-
fendant relies upon an exception in a statute for a defense, the
state must prove that he is not within the protection of the excep-
tion.

Criminal Law—Instructions to be Interpreted in Their Entirety.

8. Instructions by the court are to be applied and interpreted in
their entirety.

Criminal Law—Court Need not Give Requested Instructions Where Issues have Been Covered.

9. When instructions given by the court cover all the questions at issue and are free from error, it is unnecessary for the court again to state the law to the jury, notwithstanding that requested instructions contain true statements thereof.

Criminal Law—Statement "No Serious Objection" Constitutes No Objection.

10. The statement of counsel of accused, "No serious objection," concerning admission of evidence, constituted no objection.

Criminal Law—Jury Exclusive Judges of Weight of Evidence and Credibility of Witnesses.

11. The jury are the exclusive judges of the effect and value of evidence and the credibility of the witnesses.

Intoxicating Liquors—Fermented Juice of Grape is "Wine."

12. The fermented juice of the grape is "wine," though the term is loosely used as to unfermented juice of the grape or any fruit used as a beverage.

Intoxicating Liquors—Evidence Sufficient to Sustain Conviction of Unlawful Possession of Intoxicating Liquors.

13. Evidence *held* sufficient to sustain a conviction of unlawful possession of wine.

From Columbia: JAMES A. EAKIN, Judge.

Department 2.

This is an appeal from judgment of conviction of a crime committed in violation of the Prohibition Liquor Law. The crime consisted in the unlawful possession of intoxicating liquor.

Louis Rosasco was the manager of the Columbia River Produce & Canning Company, and an owner of the property possessed by it. He resided on the top floor of the cannery, and had the privilege of using the basement.

The grand jury for the Circuit Court in and for Columbia County, Oregon, by indictment, charged that:

"The said L. Rosasco, on the seventeenth day of October, A. D. 1919, in the said county of Columbia, and State of Oregon, then and there being, did then

and there willfully and unlawfully possess intoxicating liquor contrary to the statute * * ."

The defendant, on being arraigned upon this charge, pleaded not guilty, and entered upon his trial.

The evidence adduced upon the trial shows that the defendant ordered three carloads of grapes in the autumn of 1919, one of which he shipped "down the river." The other two he attempted to sell at St. Helens and vicinity but had on hand about seven tons of grapes, which he says he could not sell. It is asserted by the prosecution that these grapes were hauled from the car to the basement of the cannery during the nightime, and that they were thereafter manufactured into wine.

On October 17, 1919, a raid was made by the sheriff of Columbia County, on the premises where the grapes were crushed and the wine stored, and twenty barrels, a few jugs and bottles were found containing wine, fermenting and fermented, together with a vat thirty inches high and ten feet in diameter, containing grape pumice and fermenting liquid. Presses designed to press juice from grapes were also found in the basement.

The deputy sheriff testified that he took samples of the liquor to Portland for the purpose of ascertaining the alcoholic content.

"We first took six samples; and then the following Tuesday morning we took thirty-one samples, taking a sample of each container, barrel, bottle, demijohn."

The samples were taken by means of hose with which he drew the liquor from the containers into the bottles, and the samples examined were identified with the containers from which they were taken, and for the purpose of identification in evidence were marked as exhibits 1–A to 31–A.

Albert S. Wells, chemist in the office of the Oregon Dairy & Food Commission, testified to making an analysis of exhibits A–1 to 31, inclusive, for the purpose of ascertaining the alcoholic content; that when he received the samples on October 22d from Deputy Sheriff Butler, some of them were yet fermenting; that sample No. 1 showed alcohol, by volume, 4.15 per cent; sample No. 2, 3.52 per cent; No. 3,

"I labeled it being a red wine; a very poor wine; I would say that it was about a third pressing of wine."

"Q. About a third pressing of grapes?

"A. Yes.

"Q. In order to save time, what do you call all this stuff?

"A. It is wine, most of it.

"Q. No. 4?

"A. No. 4 is wine of the best grade; that would be what you call the first pressing. That contains alcohol by volume 14.05. * * That is what I would call good 'Dago Red.'

"Q. No. 5; what is the result of your analysis of that?

"A. No. 5 is one of the best grades too, first pressing, 13.85 per cent. * * Sample No. 6 contained an alcoholic content of 11.55.

"Q. What is the highest per cent of alcohol by volume that grape juice can contain through natural fermentation without the addition of alcohol or sugar?

"A. About 14 or 15 is about as high without adding alcohol or sugar.

"Q. So that some of these contained the maximum per cent?

"A. All it could."

Upon analysis, five of the samples showed an alcoholic content of more than 14 per cent; six, less than 14 and more than 13 per cent; five, less than 13

and more than 9 per cent; seven, less than 9 and more than 7 per cent, and the remainder were of a lesser per cent.

At the conclusion of the state's evidence, the defendant moved for a dismissal of the case against him, upon the grounds:

"First, that the indictment did not charge a crime against the defendant; and,

"Second, on the ground that the evidence failed to support the charge set out in the indictment, and, further, did not show that at the time this product was found as alleged in defendant's possession, that it contained alcohol of more than one half of one per cent per volume and was intoxicating liquor.

"Third, that it was not shown by any evidence that the defendant had it unlawfully in his possession."

The court overruled the defendant's motion.

The defendant, entering upon his defense, testified to a state of facts tending to show that he was engaged in the manufacture of vinegar. He admitted that the product, which was chiefly vinous liquor, taken from him by the officers of Columbia County, was his property, but asserted that he had it in his possession for a lawful purpose; namely, for the manufacture of vinegar. He further testified that when the state went dry he owned and possessed about six barrels, or three hundred gallons, of wine; that he had consumed all this with the exception of seventy-two gallons; that this remainder, at the time of the sheriff's raid, was in the basement and was taken therefrom by the sheriff; that it was in one fifty-gallon barrel, one fifteen-gallon keg, a ten-gallon keg, and two one-gallon jugs. His testimony was corroborated by that of his wife.

The jury, by special verdict, found that the defendant had had in his continuous lawful possession

since the state went dry, liquor contained in containers
Nos. 18, 26, 27, 28, 29 and 30. This was returned
to him.

The jury also returned into court a general verdict,
finding the defendant guilty, as charged.

The defendant, on his appeal, avers that the court
erred:

1. In denying defendant's motion to dismiss.

2, In refusing to direct a verdict of acquittal.

3. In permitting the sheriff to testify concerning
other raids.

4. In refusing to instruct the jury as requested
by defendant.

5. In that the defendant has been deprived of his
property and liberty without due process of law, and
in violation of the Constitution of the State of Oregon
and of the United States of America.

AFFIRMED.

For appellant there was a brief over the names of
*Messrs. Cleeton & McMenamin* and *Mr. Delbert A.
Norton,* with an oral argument by *Mr. T. J. Cleeton.*

For respondent there was a brief and oral argu-
ment by *Mr. John L. Foote,* District Attorney.

BROWN, J.—1. Neither averment nor proof of
criminal intent is involved in the crime charged to
have been committed by the defendant. He contends,
however, that the indictment is insufficient, in that it
does not charge him with having the "product in his
possession for the purpose of using the same as a
beverage," as defined by Section 2, Chapter 141,
General Laws of 1915, and Section 2224—1, Or L.
The words "intoxicating liquor," as used in this
section of our prohibitory law, embrace all

1. (a) Spirituous liquors
   (b) Malt liquors
   (c) Vinous liquors
   (d) Fermented or other intoxicating liquors;
2. (a) And all mixtures or preparations reasonably likely or intended to be used as a beverage, which shall contain in excess of one half of one per centum of alcohol by volume; and
3. (a) All mixtures, compounds or preparations, whether liquid or not, which are intended, when mixed with water or otherwise, to produce, by fermentation or otherwise, an intoxicating liquor.

Section 2224—4, Or. L., provides that

"It shall be unlawful for any person to receive, import, possess, transport, deliver, manufacture, sell, give away, or barter, any intoxicating liquor within this state."

Under a proviso contained in this section, it is enacted that

"It shall not be unlawful for any person to have in his possession intoxicating liquor lawfully procured and in the possession of such person within this state at the time of the taking effect of this amendatory act, or lawfully obtained or received under the provision of this act."

Section 2224—5 reads:

"The provisions of this act shall not be construed to prevent the making or selling of vinegar, alcohol manufactured for denaturation only and actually denaturized under the laws and regulations of the United States government, or nonintoxicating cider or fruit juices, or the making of wine for sacramental purposes."

From the provisions of Section 2224—4, together with the definition of "intoxicating liquor," it will be

seen that the language of the indictment states facts sufficient to constitute a crime. The indictment is for the crime of possessing vinous liquors that are deemed intoxicating liquors under the provisions of Section 2224—1, Or. L. The contention of counsel relating to the word "beverage" would find some support if the liquors manufactured and possessed by the defendant were not wine, but a mere "mixture or preparation reasonably likely or intended to be used as a beverage, which shall contain in excess of one half of one per centum of alcohol by volume." The indictment states facts that bring the act of the defendant within the prohibition of the law. The statute defining the offense charged against the defendant does not require an allegation that the liquor was either manufactured or possessed for beverage purposes, neither does it require an allegation in the indictment that the vinous product was not possessed for the purpose of manufacturing vinegar.

2. The defendant asserts his right to manufacture the product seized, under the exception contained in the Prohibition Law permitting the manufacture of vinegar, and he vigorously argues that it is for the state to aver and prove that he was not manufacturing vinegar.

Section 2224—58, Or. L., is Section 33, Chapter 141, Laws of 1915, the original Prohibition Law. Among other things, it provides that:

"In prosecutions of this act, whether begun by indictment, complaint or information, * * it shall not be necessary * * for the state to allege or prove that the party charged * * was not within any of the exceptions provided by this act." See *State* v. *London,* 99 Or. 189 (195 Pac. 344); *State* v. *Busick,* 90 Or. 466 (177 Pac. 64); *State* v. *Wilbur,* 85 Or. 565 (166 Pac.

51); *Sustar* v. *Co. Court of Marion County,* 101 Or. 657 (201 Pac. 445).

The possession of intoxicating liquor was made a substantive offense by Chapter 30, General Laws of 1917, which became a part of the Prohibition Act and is to be construed with the other provisions thereof.  Chapter 141, Laws of 1915, the original Prohibition Act, together with its amendments, should be construed as a whole.  This section of the statute relating to pleading and proof relieves the prosecution of the necessity of averring or proving that the act charged as a crime does not come within an exception or proviso.

3. The indictment in the case at bar meets the test prescribed by our fundamental law.  It informs the defendant that he is charged with breaching a particular law, and states to him when, where, and how he violated it.  That much, and only that, the fundamental law requires.  No indictment founded upon the statute can be good which does not contain sufficient allegations to inform the defendant of the nature and cause of the accusation against him: Section 11, Article I, Oregon Constitution.  In *State* v. *Branton,* 49 Or. 86 (87 Pac. 535), this court held that statutes passed in pursuance of the provision declaring that the accused shall have the right to demand the nature and cause of the accusation against him, provide that the information must be direct and certain as it regards the crime charged, and the particular circumstances thereof when they are necessary to constitute a complete offense.

4, 5. Independent of the provisions of Section 2224—58, the prosecution is not required to plead or prove that the defendant's act is not within the embrace of the exception contained within the statute.

As to the necessity of pleading an exception in an indictment, it has been frequently held by the adjudications and stated by the text-writers that if the exception is in the enacting clause the indictment. must, by proper averment, show that the act alleged to have been committed by the accused is not within the exception, but whenever. the exception is in a subsequent clause of the statute, that the matter contained in the exception is a matter of defense and must be shown by the accused: *State* v. *Tamler,* 19 Or. 528 (25 Pac. 71, 9 L. R. A. 853); *State* v. *Carmody,* 50 Or. 1, 8 (91 Pac. 446, 91 Pac. 1081, 12 L. R. A. (N. S.) 828); *State* v. *Edmunds,* 55 Or. 236 (104 Pac. 430); 2 Bishop's Crim. Proc., §§ 631, 633; 1 Wharton's Crim. Proc., §§ 288, 290; Clark's Crim. Proc., § 98.

" * * But while it is undoubtedly true that exceptions which are not in the enacting clause of a statute as descriptive of the offense, need not be negatived and those which are in the enacting clause as descriptive of the offense must be negatived, the more accurate rule deducible from the authorities is that only such exceptions and provisos need be negatived as are descriptive of the offense, without reference to the position of the exception or proviso." 10 Ency. Pl. & Pr. 495–497. Also see Clark's Crim. Proc., § 98; Bishop's Crim. Proc., §§ 331–341; *State* v. *Ah Chow,* 16 Nev. 53 [40 Am. Rep. 488]; *Territory* v. *Scott,* 2 Dak. 212 [6 N. W. 435]; *Metzker* v. *Peoples,* 14 Ill. 101; *Territory* v. *Burns,* 6 Mont. 74 [9 Pac. 432]; *State* v. *McGlynn,* 34 N. H. 422; *Stanglein* v. *State,* 17 Ohio St. 461; *State* v. *O'Donnell,* 10 R. I. 472; *State* v. *Abbey,* 29 Vt. 66 [67 Am. Dec. 754]; *Nelson* v. *United States,* 30 Fed. 112; 1 Wharton's Crim. Proc., §§ 288–290.

Provisos and exceptions, though distinct in meaning, are generally treated together in the discussion of criminal pleadings.

103 Or.—23

6. We will here pause to note that it has been observed by the courts that the term "enacting clause" has not been understood by all alike: *United States* v. *Cook,* 17 Wall. 168 (21 L. Ed. 538, see, also, Rose's U. S. Notes).

The Constitution of our state provides that:

"The style of our bills shall be, 'Be it enacted by the People of the State of Oregon.' "

This provision is termed the enacting clause of the law. But such is not the sense in which it is used in relation to the enacting clause of a statute defining a crime. The term "enacting clause," as here used, is understood to be all parts of the statute which define the offense: 1 Wharton's Crim. Proc., § 290. From Words & Phrases we take the following definition:

"Within the rule that exceptions in a statute should only be negatived in an indictment or information when they are descriptive of the offense defining it, but not when the exceptions afford matter of excuse only, and do not define or qualify the offense created by the enacting clause, the term 'enacting clause' should be construed to mean all parts of the statute which create and define the offense, whether in one or more sections or acts. Yet under an ordinance requiring a license fee from peddlers of certain articles providing that the owners and renters of land may vend the products thereof in all towns and cities without obtaining a license therefor, a complaint for peddling without a license need not negative the fact that defendant was vending products of his own land."

As we have seen, defendant's counsel maintain that by reason of the statutory right to make vinegar, both averment and proof that defendant was not within the exception is thrust upon the prosecution.

"The first principle that meets us is that when they [provisos and exceptions] are not so expressed in the statute as to be incorporated in the definition of the offense, it is not necessary to state in the indictment that the defendant does not come within the exceptions or to negative the statutory provisos; nor is it even necessary to allege that he is not within the benefit of the provisos, though the purview should expressly notice them." 1 Wharton's Crim. Proc., § 288; Clark's Crim. Proc., § 98.

In the case at issue a *prima facie* cause of action is stated by the facts contained in the indictment; and if the defendant wished to defend against the accusation on the ground that he was engaged in the manufacture of vinegar, it was for him to bring forward such defense: *Commonwealth* v. *Hart,* 11 Cush. (Mass.) 130; *Commonwealth* v. *Jennings,* 121 Mass. 47 (23 Am. Rep. 249); *Jefferson* v. *People,* 101 N. Y. 19 (3 N. E. 797); *Hewitt* v. *State,* 121 Ind. 245 (23 N. E. 83); *Nelson* v. *United States* (C. C.), 30 Fed. 112.

In the discussion of statutes such as that under consideration, text-writers have stated the rule thus:

"Where an offense is created by statute and exception is made, either by another statute, or by another and substantive clause of the same statute, it is not necessary for the prosecution, either in the indictment or by evidence, to show that the defendant does not come within the exception; but that is for the defendant to prove the exception and which he may do under the plea of not guilty." 2 Woollen & Thornton, Intoxicating Liquors, § 880.

To like effect are *United States* v. *Cook,* 17 Wall. 168 (21 L. Ed. 538, see, also, Rose's U. S. Notes); *United States* v. *Britton,* 107 U. S. 670 (27 L. Ed. 520, 2 Sup. Ct. Rep. 512); *State* v. *Abbey,* 29 Vt. 60 (67 Am. Dec. 754).

Under the overwhelming weight of authority, it is plain that whenever the defendant's case falls within some exception of a statute, he has the burden of evidence to show that he comes within such exception: *People* v. *Clark,* 61 App. Div. 500 (70 N. Y. Supp. 594); *State* v. *Collins,* 28 R. I. 439 (67 Atl. 796); *State* v. *Cloughly,* 73 Iowa, 626 (35 N. W. 652).

When the possession of intoxicating liquor has been established by the prosecution, as in the case at issue, and the defendant sets up the claim that such possession is not unlawful because coming under the terms of an exception contained in the statute permitting such possession for the purpose of the manufacture of vinegar, the burden of evidence is cast upon the defendant to establish such defense: Joyce, Intoxicating Liquors, § 685; Black, Intoxicating Liquors, § 511; 2 Woollen & Thornton, Intoxicating Liquors, p. 1589. As illustrating this principle, see Underhill on Crim. Ev., § 24, p. 44; 1 Wharton's Crim. Ev., § 342.

In harmony with the weight of authority is the following excerpt:

"Where the subject matter of a negative averment in the indictment, or a fact relied upon by defendant as a justification or excuse, relates to him personally or otherwise lies peculiarly within his knowledge, the general rule is that the burden of proof as to such averment or fact is on him." 16 C. J., § 998, and authorities cited under note 65.

Illustrating the doctrine is *State* v. *Cutting,* 3 Or. 260. Cutting was charged with selling intoxicating liquor without license, and the burden was cast upon him to prove justification through license. A valuable authority is *Bell* v. *State,* 62 Tex. Cr. 242 (137 S. W. 670, 36 L. R. A. (N. S.) 98, and extensive

list of decisions collected in the note).   Also see Ann. Cas. 1913C, 617, and excellent note.

7. The trial court, by its instructions, did not reverse the presumption of innocence with which the law clothes every defendant when upon trial charged with crime.   The presumption of innocence is not a mere form, but a substantial part of the law, that remains with the defendant from the beginning of the trial until a verdict is found.   The law presumes every defendant upon trial charged with crime to be innocent, and it devolves upon the prosecution to prove by evidence to the satisfaction of the trial jury beyond a reasonable doubt, that the defendant committed the crime charged in the indictment.   The burden of proof is never shifted from the state to the defendant, but remains with the state throughout the trial, to establish every constituent element of the crime as charged: *State* v. *Huffman*, 16 Or. 15, 24 (16 Pac. 640); *State* v. *Gibson*, 43 Or. 184 (73 Pac. 333); *State* v. *Keelen*, *supra*, 172 (203 Pac. 310); Bishop's Crim. Proc. 1048–1055; *State* v. *Duestrow*, 137 Mo. 44 (38 S. W. 554, 39 S. W. 266); *Horn* v. *State*, 30 Tex. App. 541 (17 S. W. 1094); *Long* v. *State*, 23 Neb. 33 (36 N. W. 310); *State* v. *Lowry*, 42 W. Va. 205 (24 S. E. 561).   But this does not mean that when a defendant relies upon an exception for a defense, the state must prove that he is not within the protection of the exception.

"Indeed," say the editors of R. C. L., "It is stated as a maxim that the burden of proof never shifts from the prosecution to the defense.   This, however, means only that it never shifts in so far as it is necessary to make out the specific crime charged in the indictment, by establishing the *corpus delicti* and the constituent elements of the crime.   When distinct, substantive matter is relied upon by the de-

fendant to exempt him from punishment and absolve him from liability, which is foreign to the issue as made by the state in the charge against him, the burden of proving it properly should be upon the defendant.'' 8 R. C. L., p. 171. See Wharton's Crim. Ev., §§ 331, 332.

The defendant admits the ownership and possession of the vinous liquor taken from him. It is not for the state to prove that the defendant intended, or did not intend, to turn his wine into vinegar. If such was the defendant's purpose, it was knowledge peculiar to himself, and it was his duty to go forward if he would avail himself of the common defense of making vinegar. For an instructive discussion of the meaning of the phrase ''burden of proof,'' see *Askay* v. *Maloney,* 92 Or. 566, 574 (179 Pac. 899), and *Hansen* v. *Oregon-Washington R. & N. Co.,* 97 Or. 190 (188 Pac. 963, 190 Pac. 655).

The defendant assigns error because the court did not charge the jury in accordance with his requested instructions numbered 1 to 14, inclusive. He also claims error because of certain instructions given.

8. That the instructions given by the court to the jury shall be applied and interpreted in their entirety, is a point of practice so well settled as to require no citation of authority in its support.

9. It is equally well settled that when instructions given by the court cover all the questions at issue and are free from error, it is unnecessary for the court again to state the law to the jury, notwithstanding the requested instructions contain true statements thereof.

The following instructions given show that the defendant did not suffer from the court's charge.

"In the case of defendant's claiming that he was intending to convert the liquor found in his possession, other than that which he had prior to the Prohibition Law, into vinegar for commercial purposes, I instruct you that the burden is on him to establish that intention. The state is not required to prove that he did not intend to make vinegar out of it. That claim is made as a justification or excuse for the possession of the liquor, and the burden is on him to establish it to your satisfaction. He is not, however, required to establish it to your satisfaction beyond a reasonable doubt, but it must satisfy your minds to the extent of the raising of a reasonable doubt in your minds of his guilt, and unless he does so satisfy you of that intention, and you find the liquor was intoxicating liquor as defined to you, you should find the defendant guilty. * *

"This is a criminal action, and before you can convict the defendant, you must be satisfied beyond a reasonable doubt of every fact necessary to constitute the crime charged in the indictment; that is to say, if you have a reasonable doubt as to any fact that would be necessary to constitute the crime charged, you must find him not guilty. He has a right to the benefit of that reasonable doubt at all stages of the case * * .

"The burden of proof, however, of establishing the lawful possession of such liquor rests upon the defendant, and not upon the state. The defendant, however, is not required to establish that fact by evidence which satisfies your minds beyond a reasonable doubt of its existence. It is sufficient if his evidence in that particular creates in your minds a reasonable doubt of the defendant's guilt so far as that particular liquor is concerned."

Error is claimed by reason of the court's admitting certain evidence over the objection of the defendant and denying his motion to strike it from the record. The condition of the record is such that the defendant's exception can avail him nothing. Counsel

for defendant opened the subject of the possession of wine by others, and when the state on redirect examination undertook to interrogate the witness concerning the same and like matter, he said:

"I object to that as incompetent, irrelevant and not gone into fully on cross-examination or at all, and volunteered by the witness,—beside the issues in this case.

"The Court: It was brought into the case, however.

"Mr. Norton: I have no serious objection."

Thereupon the prosecution asked the following question:

"Just tell about the other people,—where you got the other bottles; what else you found with them, and who they were.

"A. On the same day, the seventeenth day of October, we visited several houses, basements more particularly, and I think five other places we found wine."

10. If damage was done to the defendant by this character of evidence, he was injured when this question was answered. The statement "no serious objection" constitutes no objection.

11. The defendant insisted at the close of the state's evidence in chief, and again at the conclusion of the whole of the evidence, that the state had failed to prove its case. The jury were the exclusive judges of the effect and value of the evidence, and of the credibility of the witnesses. They heard the state's witnesses testify concerning the defendant's manufacturing and possession of wine by the hundreds of gallons.

12. There was abundant evidence upon which to support a verdict, finding that the defendant's purpose was to manufacture wine, as he did, and not something else. He made "wine," as that term is

primarily defined,—the fermented juice of the grape: Webster's New International Dictionary; The Century Dictionary; 40 Cyc. 2121. A secondary definition includes currant wine, gooseberry wine, loganberry wine, or, loosely, the unfermented juice of the grape or any fruit, used as a beverage.

"Wines are distinguished practically by their color, their hardness or softness on the palate, their flavor, and their being still or effervescing. * * The leading character of wine, however, must be referred to the alcohol which it contains, and upon which its intoxicating powers principally depend. The amount of alcohol in the strong port and sherry as found in the market is from sixteen to twenty-five per cent; in hock, claret and other light wines, from seven per cent. Wine containing more than thirteen per cent of alcohol may be assumed to be fortified with brandy or other spirit." Century Dictionary.

13. From the above it will be seen that much of the liquor taken from the defendant's possession, when measured by its alcoholic content, was of the best grade of wine, a fermented vinous liquor judicially known as an intoxicating liquor.

From Nelson's Encyclopaedia we take the following definition of vinegar:

"The weak solution of acetic acid that is obtained by the oxidation of a dilute alcoholic liquor by the aid of the micro-organism, bacterium aceti. The percentage of alcohol must not rise above ten. The liquors most often fermented are cider, a special kind of beer, from which malt vinegar is obtained, or an inferior wine, from which white vinegar or wine vinegar is prepared."

Referring to the defendant's excuse for possessing so much liquor, it may be possible that he intended to manufacture vinegar from his wine, but in view of the evidence we cannot set the verdict aside. The

jury heard his testimony. They observed his appearance and demeanor upon the witness-stand. They were the judges of his good faith. They heard him relate how he intended to turn his Zinfandel wine into vinegar. They learned all the surrounding circumstances. They were fully advised, and capable of deciding the matter fairly, impartially and intelligently. They no doubt wondered why darkness and secrecy accompanied defendant's labor in the lawful business of conducting a vinegar factory. Not only was the defendant unable to convince them, but he failed to raise in their minds a reasonable doubt.

This case is affirmed.                    AFFIRMED.

BURNETT, C. J., and BEAN and McCOURT, JJ., concur.