Argued February 21, affirmed April 15, reconsideration denied
May 22, petition for review allowed July 30, 1974

STATE OF OREGON, *Respondent, v.* JAMES
LEONARD McCOY (No. 73-41-C),
*Appellant.*
521 P2d 1074

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for appellant.

*Timothy Wood,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Tanzer, Judges.

LANGTRY, J.

Defendant appeals from conviction in a jury trial of murder. ORS 163.115. The principal question presented is whether the jury should have been instructed that in order to convict the defendant of murder it must find beyond a reasonable doubt the nonexistence of "extreme emotional disturbance" as defined in ORS 163.125 (1) (b) and (2). We find that such instructions were necessary and that the instructions given so informed the jury.

The essential facts, viewed from the standpoint of what the jury could infer from the evidence, are that defendant was estranged from his wife and knew that she was keeping company with a friend of theirs, James Stewart. Defendant came from Woodland, California to Merrill, near where his wife was staying, stopped at a bar and asked for directions to where Stewart was living. He went outside and got in his vehicle, at which time he saw his wife and Stewart pass in a pickup. He followed them for five miles, and when they stopped by an auto court, he came to the side of the pickup and with a pistol shot Stewart seven times. He went to his vehicle, reloaded the pistol, and returned and shot Stewart in the head eight more times. He then gave money and some personal items to his wife, told witnesses to notify police he was on the way to turn himself in and then did just that. When he arrived at the police station, he told what had happened; and the interrogating officer testified that "[h]e was rather calm, and talkative, * * *" and that

he showed no signs of nervousness, sweating or abnormal speech. He had acquired the pistol about a week before the homicide, and he testified that he had shot it twice at a fence post earlier in the day. Defendant testified that he had no memory of shooting Stewart, but could remember "standing there * * * watching my hand go up and down."

Two psychiatrists testified for the defense and one for the state. All corroborated defendant's testimony that he had "flipped out." The state's psychiatrist felt that even so defendant did know what he was doing when he shot Stewart. The other psychiatrists disagreed. Some of the evidence produced by the state, which is summarized above, could fairly raise the inference that defendant had not "flipped out" at all prior to firing 15 shots into Stewart.

ORS 163.115 and 163.125 provide:

"(1) Except as provided in ORS 163.125, criminal homicide constitutes murder when:

"(a) It is committed intentionally * * *

"* * * * *." ORS 163.115.

"(1) Criminal homicide constitutes manslaughter when:

"* * * * *

"(b) A homicide which would otherwise be murder is committed under the influence of extreme emotional disturbance, which disturbance is not the result of his own intentional, knowing, reckless or criminally negligent act, and for which disturbance there is a reasonable explanation * * *

"* * * * *." ORS 163.125.

■ In *State v. Siens*, 12 Or App 97, 504 P2d 1056, Sup Ct *review denied* (1973), we stated:

"* * * There is no provision saying that the

defense of 'extreme emotional disturbance' under ORS 163.125 is an affirmative defense. Therefore, under * * * ORS 161.055, it is a 'defense' and the state has the burden of disproving it beyond a reasonable doubt * * *." 12 Or App at 101-2.

We went further in *Siens* to say:

"* * * [T]he state has the burden of proving beyond a reasonable doubt that the defendant was not under an extreme emotional disturbance as defined in ORS 163.125 * * *." 12 Or App at 104.[1]

 The state here contends that the language in *Siens* was dicta in that case; dicta that the state contends is erroneous. The state argues that, since the legislature failed to enumerate extreme emotional disturbance as either a defense or an affirmative defense, the provisions of ORS 161.055[2] relied upon in

---

[1] In State v. Siens, 12 Or App 97, 504 P2d 1056, Sup Ct *review denied* (1973), we made no mention of the exact elements of the extreme emotional disturbance defense. In State v. Davis, 16 Or App 405, 518 P2d 1039, Sup Ct *review denied* (1974), our decision in effect decided that, in order for that which otherwise would be murder to be manslaughter, the defendant must have acted (a) under the influence of an extreme emotional disturbance that (b) was not the result of his own intentional, knowing, reckless or criminally negligent act and (c) for which disturbance there was a reasonable explanation. If any one of these three elements is found to be lacking, the crime is murder, not manslaughter. *See also* State v. Corbin, 15 Or App 536, 516 P2d 1314 (1973), Sup Ct *review denied* (1974).

[2] ORS 161.055 provides:

"(1) When a 'defense,' other than an 'affirmative defense' as defined in subsection (2) of this section, is raised at a trial, the state has the burden of disproving the defense beyond a reasonable doubt.

"(2) When a defense, declared to be an 'affirmative defense' by chapter 743, Oregon Laws 1971 [which is the entire Oregon Criminal Code of 1971], is raised at a trial, the defendant has the burden of proving the defense by a preponderance of the evidence.

"(3) The state is not required to negate a defense as defined in subsection (1) of this section unless it is raised by the

*Siens* are inapplicable. Instead, the state argues that "extreme emotional disturbance" is the equivalent of the common law exception to murder that mitigates the crime to manslaughter. Former ORS 163.040 (1). *State v. Trent,* 122 Or 444, 454, 252 P 975, 259 P 893 (1927).[9] The state urges that under common law the burden of proof to establish the manslaughter exception to murder was on the defendant, and that we should hold the defendant must establish this exception by a preponderance of the evidence.

The arguments must be considered in light of what is meant by "burden of proof." "Burden of proof," used loosely, encompasses two different concepts. One is the burden of producing evidence; the other is the

---

defendant. 'Raised by the defendant' means either notice in writing to the state before commencement of trial or affirmative evidence by a defense witness in the defendant's case in chief."

[9] "Heat of passion" was a negation of the element of malice aforethought as murder was defined under old ORS 163.010 (1) and at common law, I Wharton, Criminal Evidence 45-6, § 25 (Torcia 13th ed 1972). Malice aforethought is no longer an element under ORS 163.115 (1) (a) which requires only that the criminal homicide be committed "intentionally" to constitute murder. Proof of "extreme emotional disturbance" does not specifically negate the "intentional" element of murder but rather empowers the jury to find a "reasonable explanation" for his otherwise "intentional" conduct and thus convict him of a lesser crime. While the present scheme lacks the logical structure of the old "heat of passion" concept, functionally they both permit the jury to consider the defendant's motivation in passing on his degree of guilt.

It is our view that "extreme emotional disturbance" is only an element of the crime of manslaughter when this issue is raised by the evidence in a *murder* prosecution. Where the crime charged is manslaughter, "extreme emotional disturbance" is irrelevant. The only issue then is whether the defendant recklessly committed criminal homicide. We note that in the New York adoption of the Model Penal Code the legislature specifically enunciated this factor. NY Penal Law § 125.20 (2) (McKinney 1967).

burden of persuading the trier of fact. The first burden determines which party faces the risk of suffering an adverse directed verdict in a given factual issue. The second determines in whose favor the trier of fact should resolve doubts left by the evidence. *Askay v. Maloney,* 92 Or 566, 574, 179 P 899 (1919). *See* McCormick, Evidence 783-85, § 336 (hornbook series, 2d ed 1972).

At common law the burden of producing evidence to establish an exception to a crime was on the defendant. *State v. Rosasco,* 103 Or 343, 356, 205 P 290 (1922). Wharton, Homicide 221, § 148 (Bowlby 3d ed 1907), states:

> "* * * And, as a general rule, the burden of proving justification or mitigation of a homicide is regarded as resting with the accused, unless the proof already in the case sufficiently manifests it. The state in a prosecution for murder in the second degree is not called upon to prove affirmatively that there were no circumstances of justification or extenuation, to warrant a conviction * * *." (Footnotes omitted.)

■ ■ To establish a "defense," the burden of producing evidence rests on the defendant. ORS 161.055; *State v. Williams,* 12 Or App 21, 503 P2d 1254 (1972), Sup Ct *review denied* (1973). If he fails to meet this burden, he suffers a rough equivalent of a directed verdict on this defense in that it is not submitted to the jury unless, of course, the state has produced evidence supporting the defense in its case-in-chief.④

---

④ Even if this were not so, where "extreme emotional disturbance" is considered, the state need produce no evidence because it can never suffer the equivalent of a directed verdict on this issue. This is because the question of the reasonableness of the explanation for the extreme emotional disturbance is completely

■ As our decision in *State v. Williams,* supra, implies, burden of proof as used in ORS 161.055 (1) and (2), quoted in n 2, governs the allocation of the burden of persuasion and not the burden of producing evidence.

■ At common law the burden of persuasion to establish the defendant's guilt in face of his introduction of evidence that his conduct was within a statutory exception to the crime charged was on the state. In a case involving a statutory exception to the prohibition law our Supreme Court gave approval to the following instruction:

> " 'In the case of defendant's claiming that he was intending to convert the liquor found in his possession * * * into vinegar for commercial purposes, I instruct you that the burden is on him to establish that intention. The state is not required to prove that he did not intend to make vinegar out of it. That claim is made as a justification or excuse for the possession of the liquor, and the burden is on him to establish it to your satisfaction. *He is not, however, required to establish it to your satisfaction beyond a reasonable doubt, but it must satisfy your minds to the extent of the raising of a reasonable doubt in your minds of his guilt,* and

in the hands of the jury. ORS 163.125 (2); State v. Corbin, 15 Or App 536, 516 P2d 1314 (1973), Sup Ct *review denied* (1974).

We add to this footnote an observation from McCormick:

"In the first edition of this text, Dean McCormick stated:
" 'In the writer's view [the burden of producing evidence] has far more influence upon the final outcome of cases than does the burden of persuasion, which has become very largely a matter of the technique of the wording of instructions to juries. This wording may be chosen in the particular case as a handle for reversal, but will seldom have been a factor in the jury's decision.' § 307, at 634 n. 2." (Brackets theirs.) McCormick, Evidence 783, 784, n 6, § 336 (hornbook series, 2d ed 1972).

unless he does so satisfy you of that intention, and you find the liquor was intoxicating liquor as defined to you, you should find the defendant guilty. * *

" '* * * * *

" 'The burden of proof, however, of establishing the lawful possession of such liquor rests upon the defendant, and not upon the state. The defendant, however, is not required to establish that fact by evidence which satisfies your minds beyond a reasonable doubt of its existence. *It is sufficient if his evidence in that particular creates in your minds a reasonable doubt of the defendant's guilt* so far as that particular liquor is concerned.' " (Emphasis supplied.) *State v. Rosasco,* supra, 103 Or at 359.

Thus, at common law an "exception" to a crime was the equivalent of the present statutory concept of a "defense." ORS 161.055; *State v. Williams,* supra.

■■ The apparent legislative intent in enacting ORS 161.055 was to denominate all issues that could possibly be raised by the defendant as either a "defense" or an "affirmative defense" and thus to allocate the burden of persuasion (Commentary to the Proposed Oregon Criminal Code 5, Art 1, § 4 (1970)). In the absence of specific direction by the legislature we must determine where the burden of persuasion is to be allocated. This situation is unlike that in *State v. Welch,* 264 Or 388, 393-94, 505 P2d 910 (1973), where the Oregon Supreme Court said:

"* * * We have to admit that the legislature probably never considered our present problem in adopting the language of the statute. However, if it had considered the problem, we suspect it would have chosen not to impose * * *."

All that we read in the commentary to the criminal code and in the legislative minutes indicates the legis-

lature did consider the problems involved in cases like that at bar, may have failed to realize the depth of this one, but thought that the statutes enacted gave sufficient direction to the courts.

▮ The placing of the burden of persuasion beyond a reasonable doubt upon the state in a criminal case has due process connotations, but it is a policy consideration based upon reducing the risks of convictions resting on factual error. *In Re Winship,* 397 US 358, 90 S Ct 1068, 25 L Ed 2d 368 (1970). In shifting this burden as to certain "affirmative defenses," the legislature was expressing a different policy consideration. The project director for the code revision, Donald Paillette, informed the Senate Criminal Law & Procedure Committee:

> "* * * In many cases where we feel it would be unfair or unjust for the state to disprove certain aspects of certain kinds of conduct, we have characterized these things as 'affirmative defenses.' * * *" Senate Criminal Law & Procedure Committee Minutes, February 2, 1971, Exhibit A, p 9.

In coming to our conclusion we cannot overlook ORS 136.050 which states:

> "When it appears that the defendant has committed a crime of which there are two or more degrees and there is a reasonable doubt as to the degree of which he is guilty, he can be convicted of the lowest of those degrees only."

▮ While the legislature did not specifically divide criminal homicide into separate "degrees," it is apparent from the statutory scheme that murder (ORS 163.115), manslaughter (ORS 163.125), and criminally negligent homicide (ORS 163.145) are the functional equivalents of different degrees of the crime of crim-

inal homicide. ORS 163.005 (2). Given the positive direction of ORS 136.050 and the absence of a positive indication by the legislature that it intended "extreme emotional disturbance" to be an "affirmative defense," we leave the burden of persuasion upon the state. The Commentary to the Proposed Oregon Criminal Code 88, 89, Art 10, § 89 (1970), indicates this section was based on the Model Penal Code § 201.3. NY Penal Law §§ 125.20, 125.25 (McKinney 1967), containing similar provisions, were also based on the same section of the Model Penal Code. We find it significant that the New York Legislature designated "extreme emotional disturbance" an "affirmative defense" while the Oregon Legislature did not.

 If the trier of fact has any reasonable doubt as to whether the defendant is guilty of a crime, that doubt should be resolved in favor of the defendant. Where the doubt is in relation to whether defendant is guilty of manslaughter rather than murder, it should be resolved in favor of finding defendant guilty of the lesser crime.

 The refusal to give the instruction for which exception was taken was not error because the instructions taken as a whole adequately informed the jury that, if it had a reasonable doubt as to defendant's guilt of murder, it should not find him guilty thereof.⑨

---

⑨ The trial court instructed the jury:

"Oregon Law provides: A person committs [sic] the crime of murder if, without justification or excuse, he intentionally causes the death of another human being.

"When a homicide which would other wise [sic] be murder is committed under the influence of extreme emotional disturbance, which disturbance is not the result of his own intentional, knowing, reckless, or criminally negligent act, and for

The instructions, paraphrased and summarized, were to the effect that the crime charged was murder; murder is intentional homicide unless it is committed under the influence of an "extreme emotional disturbance," and the state must prove murder beyond a

which disturbance there is a reasonable explanation, then it constitutes manslaughter.

"* * * * *

"In order to establish the crime of murder, it is necessary to prove beyond a reasonable doubt every material allegation of the Indictment as follows:

"* * * * *

"3. That the defendant, James Leonard McCoy, intentionally and unlawfully caused the death of James Leroy Stewart, another human being, by shooting him with a gun.

"The material elements of the crime of manslaughter are:

"* * * * *

"3. The defendant, James Leonard McCoy, did intentionally, unlawfully and feloniously shoot James Leroy Stewart with a .22 caliber pistol;

"4. That the said shooting did cause the death of James Leroy Stewart;

"5. That the defendant, James Leonard McCoy, was acting under the influence of an extreme emotional disturbance.

"An extreme emotional disturbance, to be considered by you, must be one which was not the result of the defendant's act of shooting James Leroy Stewart, if you find that he did shoot James Leroy Stewart, and the disturbance must be one for which there is a reasonable explanation, the reasonableness of the explanation for the disturbance shall be determined from the stand point [sic] of an ordinary person in the defendant's situation under the circumstances as the defendant reasonably believed them to be.

"The burden is upon the State to prove the guilt of the defendant beyond a reasonable doubt, that is, the State must prove every element of the crime charged, beyond a reasonable doubt.

"Reasonable doubt means * * *.

"Even though you may not be satisfied of the defendant[']s innocence, never the less [sic], if you have a reasonable doubt as to his guilt, you should return a verdict of not guilty.

"* * * * *

reasonable doubt. The evidence relating to the existence of an extreme emotional disturbance can only be categorized as having been circumstantial, coupled with psychiatric and defendant's own testimony. The jury was instructed that any inconsistencies in the circumstantial evidence were to be resolved in favor of defendant. This leads us to hold that no error was committed in refusing to give defendant's requested instruction.

■■■■ Defendant also assigns as error the receipt in evidence of two letters (obviously the originals) written by defendant—one to his wife and one to his father-in-law—while he was in jail awaiting trial. It is not clear from the record how they came into the prosecutor's possession; however, their existence became known to the prosecutor because the jail authorities had read and copied them. The letters were relevant with reference to the defendant's state of mind at the time of the homicide, and also as rebuttal about

---

"There are two types of evidence in this case upon which the State may rely. One is direct evidence, such as the testimony of an eye witness [sic]. The other is circumstantial evidence * * *.

"* * * * *

"If you find that the State of Oregon has proved every material allegation of the charge of murder, then it is your duty to return this form of verdict * * * [murder form of verdict].

"If you find that the defendant, James Leonard McCoy[,] intentionally and unlawfully caused the death of James Leroy Stewart, in the manner alleged in the Indictment, but you find that the defendant was at the time acting under the influence of extreme emotional disturbance not as a result of his own intentional, knowing, reckless, or criminally negligent act, and for which disturbance there is a reasonable explanation, then it is your duty to return a verdict of guilty of the lesser included charge of manslaughter, which reads * * * [manslaughter form of verdict]."

whether his testimony that he did not remember what happened was true, because in one of them he said:

> "* * * I know that I have to do some time in prison now for what I done. But I still feel I was right in doing what I did * * *."

And in the other he said:

> "* * * I'm beginning to think I was wrong * * * to kill over a women [sic] * * *. I've never regreted [sic] killing Stewart * * *. I'm still not sorry I did it because any man stupid enough to fool around with a married women [sic] deserves it. * * * I'll kill this whole world for Chris [their child] and no son of a bitch is going to raise my kid * * *. Maybe by the time I get out I'll be out of the killing mood. But no promises to anyone. I hope you realize I'll be out in 7 yrs. at the very most * * *. I'll be 36 when I get out if I get life and if I have to do it again I'll be 49 when I get out again. Plenty of time to enjoy * * * no matter where you go I'll hunt you down like a [sic] animal and show no mercy * * *."

The jail officials had the authority to inspect the outgoing letters. *Brooks v. Cupp,* 6 Or App 539, 488 P2d 804, 47 ALR3d 1188, Sup Ct *review denied* (1971). Having seen such assertions as were made in them it can hardly be expected that the officials would say nothing about them. They were quite relevant and quite damaging to defendant. He wrote and sent them to people who were obvious state's witnesses, and by doing so set their contents at large.[®] He is in no position to complain if they were used against him.

Affirmed.

---

[®] The wife was an obvious witness for the state, although defendant had a privilege (which he asserted and later waived) as to her testimony. The letters were introduced during defendant's cross-examination. At that time defendant acknowledged he had written them and had turned them over unsealed to jail officials for mailing.

SCHWAB, C. J., concurring.

While both the majority and the specially concurring opinion of Judge TANZER reach the same result in the case at bar, I concur in the majority opinion because it places the burden of proof on the emotional disturbance issue, once it has been injected into the case by competent evidence, on the state.

I find no substantial evidence that the legislature as distinguished from the Criminal Law Revision Commission ever considered the burden-of-proof issue.

I discern from an amalgam of the murder statute, the manslaughter statute and the proceedings of the Criminal Law Revision Commission that the Commission, although it dropped the phrase "with malice" from its definition of murder, nevertheless intended that one of the essential elements of murder be an intent formed in "cool blood" rather than in the "heat of passion," which latter condition it deemed it could more accurately describe as "extreme emotional disturbance." It follows that the Commission would not have labeled "extreme emotional disturbance" as either a defense or an affirmative defense, because evidence which goes to an essential element of a crime by its very nature need not be labeled for the purpose of allocating the burden of proof. For example, we customarily describe alibi evidence as defense evidence, but alibi evidence is not the kind of evidence that the Commission or the legislature labeled as either a defense or an affirmative defense. Understandably so. Alibi evidence, if believed, negates an essential element of the criminal charge. Likewise, I believe the Commission's judgment was that "extreme emotional disturbance" would negate that quality of

intent necessary to the crime of murder. If I am correct, the murder statute might well have defined murder as an unlawful killing resulting from an intent "not formed as a result of extreme emotional disturbance."

TANZER, J., specially concurring.

While I concur in the result, I must respectfully disagree with the reasoning of the majority. I believe that the quotation from *State v. Welch,* 264 Or 388, 505 P2d 910 (1973), is controlling. There the Supreme Court acknowledged that the legislature had apparently not considered the problem at bar in its drafting of the statute and, instead of indulging in the customary fictions of assessing legislative intent in the absence of legislative intent, it construed the statute in the manner in which it concluded that the legislature would have acted had it considered the problem.

In this case, the majority escapes the duty of filling in the legislative omission by concluding that the legislature did indeed consider the issue of burden of proof regarding extreme emotional disturbance. It is on this point, and upon the conclusions that logically follow from it, that I must disagree. I think the legislative history is quite clear that burden of proof of extreme emotional disturbance was not considered and that, had it been, the legislature would have allocated the burden of proof in the same manner as it did for other defenses based upon mental impairment.

When the Senate Committee on Criminal Law and Procedure considered the subject of the insanity defense, now ORS 161.295, it approved the draft which expressly placed the burden of proof upon the defendant by a preponderance. Minutes, Feb. 10, 1971, p. 10.

When the draft regarding partial responsibility, now ORS 161.300, was considered, witnesses pointed out that the burden of proof was not allocated and the committee therefore amended Section 38 of the Proposed Oregon Criminal Code by adding language to assure that proof of partial responsibility would be treated at trial in the same manner as insanity. The result is ORS 161.305 and the added language is here emphasized:

> "Mental disease or defect excluding responsibility under ORS 161.295 *or partial responsibility under ORS 161.300* is an affirmative defense."

There was some explanatory mention during the committee's consideration of partial responsibility that any defense which is not designated as affirmative would have to be disproved by the state once evidence of it was introduced. This does not demonstrate that they considered the issue anew when they later came to the homicide sections. It is upon this fact that the majority errs. "Extreme emotional disturbance" was not considered when defenses were considered and was not thought of as a defense.[1] The question of whether

---

[1] Through the rest of the criminal code there is no hesitation of the draftsmen, when creating a defense, to call it that. For example, ORS 161.190 provides:

> "In any prosecution for an offense, justification, as defined in ORS 161.195 to 161.275, is a defense."

*See also* ORS 161.475 (2) which describes a "defense" to solicitation and conspiracy, ORS 162.035 (1) which describes what is a "defense" and what is not a "defense" to bribery, ORS 164.035 which labels each defense to theft as a "defense," ORS 163.345 which labels proximity of age a "defense" to statutory rape, ORS 162.105 which makes retraction a "defense" to perjury or false swearing, ORS 163.285 which describes a "defense" to coercion, and ORS 163.605 which provides that good faith or privilege is a "defense" to defamation. Had the legislature intended extreme emotional disturbance to be a defense, they could easily have so stated. Since the legislature did not treat extreme emotional disturbance as it treated defenses throughout the code, I see no reason that we should do so.

it was an affirmative defense, an ordinary defense or a defense at all did not arise.

The committee considered the "extreme emotional disturbance" clause of the manslaughter statute after it had completed its work on the responsibility sections and had moved on to the homicide sections. There was no mention whatever of the problem of burden of proof. The only objection was to the relaxation of the objective standard of the prior "heat of passion" test to the subjective standard of the new test.[2] The language of the draft section 89 (1) (b) was changed for the sole purpose of making the test more objective and less subjective. The language change did not deal with burden of proof.[3] The discussion of this section related to the

[2] The legislative history of ORS 163.125 reflects that the Criminal Law Revision Commission intended "extreme emotional disturbance" in its proposed form to be a liberalized equivalent of the common law "heat of passion" qualification of murder, Commentary to Proposed Oregon Criminal Code 88-89, § 89 (1970). Thus the state argued here that extreme emotional disturbance should be treated analogously to "heat of passion" under prior law. The argument for this alternative, however, is also fallacious. "Heat of passion" was a negation of the element of malice aforethought as murder was defined under old ORS 163.010 (1) and at common law, 1 Wharton, Criminal Evidence 45-46, § 25 (13 ed 1970). Malice aforethought is no longer an element under ORS 163.115 (1) (a) which requires only that the criminal homicide be committed "intentionally" to constitute murder. Therefore, since negation of malice aforethought is no longer relevant in a murder trial and because extreme emotional disturbance does not negate the intentional quality of a homicide, extreme emotional disturbance is not the equivalent of "heat of passion" and need not be treated in the same manner.

[3] Draft section 89 (1) (b) read as follows:

"A homicide which would otherwise be murder is committed under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation and excuse shall be determined from the standpoint of a person in the actor's situation under the circumstances as he believes them to be * * *."

need to narrow the application of the exception. There was no discussion whatever of the issue of burden of proof. In sum, there is nothing from which it can be inferred that burden of proof had been considered.

I therefore see no foundation for the assertion of the majority that its reading of the commentary and the legislative minutes "tends to indicate" that burden of proof of extreme emotional disturbance was considered and that the legislature intended that it be an ordinary defense.

Had the legislature considered the issue of burden of proof of extreme emotional disturbance, I think it would have allocated the burden in the same manner which it did for those most analogous defenses which also deal with impaired mental ability, i.e., insanity and partial responsibility, rather than like dissimilar defenses, e.g., self-defense or entrapment. Regarding insanity, the legislature was satisfied with the proposed allocation of proof to the defendant by a preponderance. Regarding partial responsibility, the legislature was dissatisfied with the omission of the proposed code

---

After amendments and deletions, ORS 163.125 was enacted which provides:

"* * * * *

"(b) A homicide which would otherwise be murder is committed under the influence of extreme emotional disturbance, which disturbance is not the result of his own intentional, knowing, reckless or criminally negligent act, and for which disturbance there is a reasonable explanation * * *

"* * * * *

"(2) For the purposes of paragraph (b) of subsection (1) of this section, the reasonableness of the explanation for the disturbance shall be determined from the standpoint of an ordinary person in the actor's situation under the circumstances as the actor reasonably believes them to be.

"* * * * *"

and amended it to specifically place the burden of proof upon the defendant by a preponderance. Had it considered the matter, it would surely have treated extreme emotional disturbance in the same manner.

Allocation to the defendant makes good trial sense. Proof of mental state is a matter peculiarly within the power of the defendant to produce, particularly now that the courts cannot compel a defendant to cooperate with a psychiatric examiner, *see Shepard v. Bowe,* 250 Or 288, 442 P2d 238 (1968).

Furthermore, evidence of all degrees of mental impairment is likely to be presented by the same witnesses, just as in this case the same psychiatrists testified both to mental disease and defect and to extreme emotional disturbance. It would cause confusion at trial to no good end to divide the order of proof between the defenses of insanity and partial responsibility and that of extreme emotional disturbance.

Finally, it would confuse the jury, again to no good end, to instruct it (1) that the defendant has the burden of going forward with proof and the burden of persuasion by a preponderance of the evidence regarding mental disease or defect, (2) that the defendant only has the burden of going forward with evidence of extreme emotional disturbance and the state has the burden of disproving it beyond a reasonable doubt, and (3) that the defendant has the burden of going forward with the proof and the burden of persuasion by a preponderance of the evidence regarding partial responsibility, when most commonly all three defenses are proved by the same witnesses.

I must conclude that the legislature, had it considered the issue, would have opted for consistency

rather than for inconsistency, for trial order instead of trial disorder. I conclude that it would have treated "extreme emotional disturbance," the mitigating exception to murder, in the same manner as an affirmative defense by placing the burden of proof and persuasion upon the defendant by a preponderance of the evidence.

Because I agree with the majority on the other ground of appeal and because the instructions given were more favorable to the defendant than those to which he would have been entitled under this theory of the case, I disagree with the majority and specially concur in the result.