Argued September 10, affirmed November 5, 1974

STATE OF OREGON, *Respondent, v.*
JAMES LEONARD McCOY, *Petitioner.*

527 P2d 725

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for petitioner.

*Timothy Wood,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the

brief were Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, John W. Osburn, then Solicitor General, and John W. Burgess, Assistant Attorney General, Salem.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL and SLOPER, Justices.

TONGUE, J.

Defendant appealed from a conviction for murder, contending that it was error to receive in evidence letters written by him while awaiting trial in the Klamath County jail, which were delivered unsealed by him to the sheriff for mailing. The sheriff apparently read them and made copies, which were delivered to the state's attorney. The Court of Appeals affirmed. 17 Or App 155, 521 P2d 1074 (1974). We granted defendant's petition for review because the case presents serious questions concerning censorship of mail of persons in jail, including the question whether the constitutional rights of this defendant were violated.[1]

Defendant was accused of the murder of a man found by the defendant in a vehicle with defendant's estranged wife. After shooting the man defendant turned himself in to the police. His defense was that he was acting under "extreme emotional disturbance" as defined in ORS 163.125 (1)(b). He testified on trial that he had no memory of shooting the decedent. Two psychiatrists corroborated defendant's testimony that he had "flipped out."

---

[1] Defendant also appealed on other grounds, which we do not consider for the purposes of this petition for review.

During the cross-examination of the defendant the two letters in question were received in evidence and were identified by the defendant as being written by him while in jail pending trial. One was written to his estranged wife. In that letter defendant said, among other things, that he "never regretted killing" the decedent; that he would be out of prison in seven years "at the very most" and would "hunt [her] down like a animal" to get his daughter; that "no son of a bitch is going to raise my kid"; and that "I'll be 36 when I get out if I get life and if I have to do it again I'll be 49 when I get out again." The other letter, to defendant's father-in-law, stated, among other things, that he didn't blame his wife for "not wanting to be married to a murderer"; and that "I know that I have to do some time in prison now for what I done. But I still feel I was right in doing what I did."

According to regulations then in effect at the Klamath County jail, as stated on the back of the paper on which these letters were written, "* * * outgoing letters must not be sealed." When asked on cross-examination whether he was "aware that these were going to be copied" defendant answered: "No, they said to leave them open so they can read these * * *," but that he was not aware that the letters would be copied or that the state would "use them here."

Defendant contends that his "right to privacy under the Fourth and Fifth Amendments and his privilege against self-incrimination under the Fifth Amendment to the United States Constitution [were] clearly violated." He also contends that "communication by mail is a right protected under the First Amendment" and is "not lost by virtue of imprisonment." In

addition, defendant contends that defendant's threats were not relevant to any issue arising under the indictment.

At the time of oral argument defendant conceded that outgoing mail from persons in prison may be read for reasons of security, among other reasons, and that for such a purpose no distinction can be drawn between persons in jail awaiting trial prior to conviction and persons in jail after conviction.[2]

In *Brooks v. Cupp,* 6 Or App 539, 488 P2d 804 (1971), S Ct rev denied, the Court of Appeals sustained the validity of censorship regulations of the Oregon State Penitentiary. In doing so the court quoted with approval from *Sostre v. McGinnis,* 442 F2d 178, 199 (2d Cir 1971), cert denied, 404 US 1049, in which it was recognized that:

> "The distaste with which some observers view prolonged segregated confinement attaches as well to that kind of isolation flowing from restrictions on and censorship of prisoners' correspondence:
> * * *
> "The values commonly associated with free expression—an open, democratic marketplace of ideas, the self-development of individuals through self-expression, the alleviation of tensions by their release in harsh words rather than hurled objects— these values that we esteem in a free society do not turn to dross in an unfree one. * * *"

That court went on to say, however, that:

> "Whatever wisdom there might be in such reflection, we cannot say with requisite certitude that the traditional and common practice of prisons in

---

[2] It should also be noted that this is not a suit to enjoin the application of prison regulations relating to the censoring of mail of prisoners or to invalidate such regulations. Compare Annot., 47 ALR3d 1150 and Annot., 47 ALR3d 1192 (1973).

imposing many kinds of controls on the correspondence of inmates, lacks support in any rational and constitutionally acceptable concept of a prison system. * * *"

After considering the question whether prison officials could properly delete material from or refuse to mail outgoing letters from a prisoner to his attorney and after holding such acts of censorship to be improper, the court went on to state (at 201) that:

"* * * We leave a more precise delineation of the boundaries of this protection for future cases. We need only add that when we say there may be cases which will present special circumstances that would justify deleting material from, withholding, or refusing to mail communications with courts, attorneys, and public officials, we necessarily rule that prison officials may open and read all outgoing and incoming correspondence to and from prisoners."

To the same effect, it was held in *Denson v. United States,* 424 F2d 329, 331 (10th Cir 1970), cert denied, 400 US 844 (1970), as follows:

"* * * That prison officials may inspect or examine the effects and communications of prison inmates without depriving the inmates of their constitutional rights is well established. [Citing cases] This case is clearly within the ambit of the rules laid down by the Supreme Court of the United States in Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103. * * *"

See also *United States v. Wilson,* 447 F2d 1, 8, n.4 (9th Cir 1971), cert denied, 404 US 1053, holding the same rule to be applicable, particularly where, as in this case, the prisoner knew that his letters would be "subjected to official scrutiny before reaching the intended recipient."

Although the Supreme Court of the United States in *Procunier v. Martinez,* 416 US 396, 94 S Ct 1800, 40 L ed 2d 224 (1974), recently established criteria which must be satisfied by prison censorship regulations,[3] it has not overruled its previous decision in *Stroud v. United States,* 251 US 15, 40 S Ct 50, 64 L ed 103 (1919). Indeed, in *Procunier* (416 US at 412, 94 S Ct at 1811, 40 L ed 2d at 240), the court again recognized that "the legitimate governmental interest in the order and security of penal institutions justifies the imposition of certain restraints on inmate correspondence."

More recently, in *Wolff v. McDonnell,* 418 US 539, 94 S Ct 2963, 2974-975, 2985, 41 L ed 2d 935, 950-51, 963 (1974), the court, although emphasizing that a prisoner is not stripped of all constitutional rights and that "there must be a mutual accommodation between institutional needs and objectives and the provisions of the Constitution," held that the state, operating under prison regulations where letters to prisoners from attorneys were opened in the presence of the inmate, "has done all and perhaps even more, than the Constitution requires."

This is not to say, of course, that the protection of prisoners from unduly restrictive and arbitrary censorship regulations is not also a proper subject for this court or the legislature.[4] For a discussion of the

---

[3] First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression.

Second, the limits of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. 416 US at 412, 94 S Ct at 1811, 40 L ed 2d at 240 (1974).

[4] See Model Act for Protection of Rights of Prisoners, as proposed by the National Council on Crime and Delinquency.

cases on this subject, see also Annot., 47 ALR3d 1192 (1973).

The result has been the same in other cases in which persons convicted of crimes have contended on appeal that their constitutional rights were violated by the admission in evidence of letters written while they were in jail awaiting trial and read during the censoring of their outgoing mail, or copies of such letters particularly where, as in this case, defendant was aware of the fact that his letters might be read. Thus, as held in *Denson v. United States, supra* at 330-31:

> "* * * There was no search or seizure. The appellant voluntarily delivered the messages to the inmate-orderlies who voluntarily delivered them to the correctional officers. * * *
>
> "Even if the messages had been obtained as the result of a search and seizure, appellant would be in no better position for the Constitution does not prohibit all searches and seizures, but only unreasonable searches and seizures. * * *"

To the same effect, see *United States v. Wilson, supra* at 7.[9]

Under somewhat similar facts, and in a well reasoned opinion, the Supreme Court of Missouri, in *State v. Johnson,* 456 SW2d 1, 3 (Mo 1970), held as follows:

> "* * * In the final analysis, he himself laid in front of the jailer that which he now seeks to preserve as private. The authorities did not act surreptitiously or lead him to think that what he wrote would be held secret and then violate the understanding. We rule the state did not obtain

---

[9] See Note 6 *infra.* See Palmigiano v. Travisono, 317 F Supp 776, 785 (D RI 1970), and United States v. Savage, 482 F2d 1371, 1373 (9th Cir 1973), cert denied, 415 US 932.

access to the contents of the letter by search and seizure.

"As to the claim of violation of his privilege against self-incrimination, this, too, we overrule. Defendant's admissions were discovered in the course of jail security. There is no indication this was merely a guise to get a look at defendant's correspondence. Defendant was under no compulsion or interrogation to admit guilt or make statements inferring guilt. Use by the state of his admissions does not seem unfair or violative of any of defendant's rights, but by permissible jail inspection of an inmate's mail, a not unreasonable invasion of defendant's privacy under the circumstances, [citing cases]. Looking at the matter from the standpoint of basic fairness, defendant has not been treated unfairly by using his letter against him, because, again, this is all of defendant's own doing and did not arise in a situation where defendant had a right to believe he could proceed in confidence and was then double-crossed."

This rule is similar to that approved in *State v. Elk,* 249 Or 614, 623, 439 P2d 1011 (1968), and followed in *State v. Whitewater,* 251 Or 304, 307, 445 P2d 594 (1968), that "if in the course of a lawful search evidence of another crime is discovered the evidence may be seized if the officers have probable cause to believe the seized evidence may relate to another crime."

Once the prison officials had a right to examine these letters, there is no rule "requiring them to close their eyes to what they discover." *United States v. Morin,* 378 F2d 472, 475 (2d Cir 1967).

■ For these reasons, and based upon these authorities, we hold that defendant's rights under the First, Fourth and Fifth Amendments to the Constitution of the United States were not violated by reading

his outgoing mail while he was an inmate of the Klamath County jail awaiting trial or by making copies of such letters and turning such copies over to the state's attorney for use as evidence against the defendant.

■ We also hold that at least portions of both letters were relevant to the issues of this case. Although other portions of such letters were not relevant, no objection was made to any particular portions of either letter, with the result that the entire letters were admissible. See *American Oil Pump & Tank Co. v. Foust,* 128 Or 263, 268, 274 P 322 (1929).⊗

The judgment of conviction is affirmed.

---

⊗ The privilege of communications between husband and wife was waived at the time of trial and was not claimed on appeal.