Argued February 18, reversed and remanded April 5, reconsideration
denied May 12, petition for review denied June 29, 1976

# STATE OF OREGON, *Appellant,*
## *v.*
# DONNY RAY KEYS, *Respondent.*
## (No. 75-2236-C-2, CA 5421)

548 P2d 205

*Donald L. Paillette,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*John K. Hoover,* Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

Oregon Laws 1975, ch 577, § 1, p 1305, amended ORS 163.115(1)(a) to define murder as a homicide "committed intentionally by a person who is not under the influence of an extreme emotional disturbance." Shortly after the amendment became effective defendant was indicted for murder, the indictment alleging he "did unlawfully and intentionally cause the death of another human being," etc. Defendant demurred to this indictment on the ground that it did not state a crime, ORS 135.630(4), because it failed to allege that he was not under the influence of an extreme emotional disturbance, and that ORS 163.115(1)(a), as amended, requires such an allegation. The trial court sustained the demurrer, and the state appeals.

Whether a murder indictment must allege the defendant was not under the influence of an extreme emotional disturbance can, we think, best be resolved by focusing on a somewhat broader question: How does the extreme-emotional-disturbance issue arise in a murder prosecution?

To put the question in its historical perspective, before the 1971 revision of the criminal code, Oregon statutes defined homicides involving "premeditated malice" as first-degree murder,[1] and homicides "upon a sudden heat of passion" as manslaughter.[2] The 1971 revision redefined murder as a homicide committed "intentionally," and manslaughter as a "homicide which would otherwise be murder [that is] committed under the influence of extreme emotional disturbance * * *."[3] There were similarities and differences between the older premeditated-malice/heat-of-passion concepts and the newer intentional-murder/extreme-

---

[1] Former ORS 163.010(1), *repealed,* Oregon Laws 1971, ch 743, § 432, p 2002.

[2] Former ORS 163.040(1), *repealed,* Oregon Laws 1971, ch 743, § 432, p 2002.

[3] ORS 163.115 and 163.125 as they read before the effective date of Oregon Laws 1975, ch 577, p 1305.

[ 17 ]

emotional-disturbance concepts. *See, State v. Siens,* 12 Or App 97, 504 P2d 1056, Sup Ct *review denied* (1973); *State v. Corbin,* 15 Or App 536, 516 P2d 1314 (1973), Sup Ct *review denied* (1974); *State v. McCoy,* 17 Or App 155, 521 P2d 1074, *affirmed on other grounds,* 270 Or 340, 527 P2d 725 (1974).

In *State v. McCoy, supra,* we attempted to settle most of the interpretation problems, but may not have been successful because each of the members of the *McCoy* panel wrote a separate opinion. Nevertheless, it is clear that the majority in *McCoy* at least agreed that the burden of proof on the extreme-emotional-disturbance issue is on the state once it has been injected into a murder prosecution by competent evidence.

*McCoy* was mentioned frequently during the legislative deliberations on HB 2540, which became Oregon Laws 1975, ch 577, p 1305. These 1975 amendments to the homicide statutes had several apparent purposes. One was to create an additional degree of criminal homicide, apparently to facilitate plea bargaining; thus, the present scheme is murder (life imprisonment), first-degree manslaughter (20-year imprisonment), and second-degree manslaughter (10-year imprisonment). Another change proposed to the legislature was that extreme emotional disturbance be labeled an affirmative defense; the proponents of this change made it clear they were seeking a legislative overruling of *McCoy.* It is equally clear, however, that the legislature, in rejecting this proposed change, was familiar with *McCoy* and did not intend that Oregon Laws 1975, ch 577, be any change in the basic *McCoy* rule that the burden of proof on the extreme-emotional-disturbance issue is on the state, once it has been properly raised in a murder prosecution.

As amended by Oregon Laws 1975, ch 577, the relevant statutes now provide:

"* * * [C]riminal homicide constitutes murder when:

"(a) It is committed intentionally by a person who is

not under the influence of an extreme emotional disturbance * * *." ORS 163.115(1)(a).

"Criminal homicide constitutes manslaughter in the first degree when:

" * * * * * *

"(b) It is committed intentionally under circumstances not constituting murder." ORS 163.118(1)(b).

We deduce from the legislative history that the new first-degree manslaughter offense ("intentionally under circumstances not constituting murder") means intentionally under extreme emotional disturbance. Thus the sole distinction between murder, ORS 163.115(1)(a), and first-degree manslaughter, ORS 163.118(1)(b), is the presence or absence of extreme emotional disturbance.[4]

But the question remains: Exactly how does such an issue arise in a murder prosecution? The possibilities are: (1) in the indictment; (2) based on the defendant's pretrial notice; (3) from the defendant's evidence; or (4) from either the prosecution's or the defendant's evidence.

(1) The indictment.

In ruling that extreme emotional disturbance must be negated in every murder indictment, the trial court cited *Mullaney v. Wilbur,* 421 US 684, 95 S Ct 1881, 44 L Ed 2d 508 (1975). We find *Mullaney* inapplicable. That case involved a Maine statutory scheme whereby murder was homicide with "malice aforethought" and manslaughter was homicide committed in the "heat of passion." The Maine courts required the defendant to bear the burden of proving "heat of passion." The United States Supreme Court held this allocation of the burden of proof to be unconstitutional.

---

[4]There are situations where jury instructions in the terms of criminal statutes can be potentially confusing. *See, State v. Thomas,* 13 Or App 164, 509 P2d 446 (1973). The amended homicide statutes appear to be such a situation; rather than instructing a jury that first-degree manslaughter consists of an intentional killing "under circumstances not constituting murder," it would be better to instruct that first-degree manslaughter consists of an intentional killing under extreme emotional disturbance.

■ Although there are similarities between Maine's heat-of-passion approach and Oregon's extreme-emotional-disturbance approach, we fail to see how it follows from the state's having the burden of proof that it also has the burden of pleading. Indeed, we do not need to go to *Mullaney* on the burden-of-proof issue; our own decision in *State v. McCoy,* supra, holds that the state ultimately bears the burden on the extreme emotional disturbance issue, once it is properly raised. But this tells us nothing about how the issue is properly raised, much less whether it must be negated in an indictment.

Furthermore, two footnotes in *Mullaney* demonstrate that *Mullaney* is irrelevant to the pleading question raised by defendant's demurrer in this case:

" * * * Many States do require the defendant to show that there is 'some evidence' indicating that he acted in the heat of passion before requiring the prosecution to negate this element by proving the absence of passion beyond a reasonable doubt. See LaFave & Austin, supra, at 539; Perkins, supra, n 14, at 50-51. See also nn 16 and 20, supra. Nothing in this opinion is intended to affect that requirement * * *." 44 L Ed 2d at 521, n 28.

" * * * Generally in a criminal case the prosecution bears both the production burden and the persuasion burden. In some instances, however, it is aided by a presumption, see *Davis v. United States,* 160 US 469, 40 L Ed 499, 16 S Ct 353 (1895) (presumption of sanity), or a permissible inference, see *United States v. Gainey,* 380 US 63, 13 L Ed 2d 658, 85 S Ct 754 (1965) (inference of knowledge from presence at an illegal still). These procedural devices require (in the case of a presumption) or permit (in the case of an inference) the trier of fact to conclude that the prosecution has met its burden of proof with respect to the presumed or inferred fact by having satisfactorily established other facts. Thus, in effect they require the defendant to present some evidence contesting the otherwise presumed or inferred fact. See *Barnes v. United States,* 412 US 837, 846 n 11, 37 L Ed 2d 380, 93 S Ct 2357 (1973) * * *." 44 L Ed 2d at 522, n 31.

In this court, the parties' arguments have shifted away from *Mullaney* — the state's brief not even men-

tioning the case — into a contest to attach a label to the extreme-emotional-disturbance issue. The defendant contends it is the element that distinguishes murder from first-degree manslaughter, either aggravating manslaughter to murder or, alternatively, mitigating murder to manslaughter. The state proposes a variety of different labels: exception, justification, excuse, exemption, defense and affirmative defense. The defect with both parties' argument here is their apparent assumption that the question of whether extreme emotional disturbance must be negated in a murder indictment will follow automatically from the label used.

We disagree. The rules governing the sufficiency of indictments are statutory. ORS 132.510. The only relevant statute, ORS 132.550, provides:

> "The indictment shall contain substantially the following:
>
> " * * * * * *
>
> "(7) A statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended * * *."

In recent years, the trend in Oregon courts has been to require substantially less specificity in indictments.[5] The rationale in the cases has been that, although the

---

[5] *State v. Nussbaum,* 261 Or 87, 491 P2d 1013 (1971); *State v. House,* 260 Or 138, 489 P2d 381 (1971); *State v. Hawkins,* 255 Or 39, 463 P2d 858 (1970); *State v. McIntire,* 22 Or App 161, 537 P2d 1151, *former opinion adhered to,* 22 Or App 611, 540 P2d 399 (1975); *State v. Laemoa,* 20 Or App 516, 533 P2d 370, Sup Ct *review denied* (1975); *State v. Johns,* 20 Or App 249, 531 P2d 282 (1975); *State v. Draves,* 18 Or App 248, 524 P2d 1225, Sup Ct *review denied* (1974); *State v. Petersen,* 17 Or App 478, 522 P2d 912, *reversed in part on other grounds,* 270 Or 166, 526 P2d 1008 (1974); *State v. Cannon/Clark/Green/Donnelly,* 17 Or App 379, 521 P2d 1326, Sup Ct *review denied* (1974); *State v. Allen,* 16 Or App 456, 518 P2d 1332, Sup Ct *review denied* (1974); *State v. Andrews,* 16 Or App 144, 517 P2d 1062 (1974); *State v. Shadley/Spencer/Rowe,* 16 Or App 113, 517 P2d 324 (1973); *State v. Haas,* 13 Or App 368, 510 P2d 852, *affirmed* 267 Or 489, 517 P2d 671 (1973), *reversed on other grounds* 420 US 714, 95 S Ct 1215, 43 L Ed 2d 570 (1974); *State v. Jim/White,* 13 Or App 201, 508 P2d 462, Sup Ct *review denied* (1973); *State v. Taylor,* 13 Or App 192, 509 P2d 50 (1973).

defendant has a constitutional right to notice, this need not be accomplished solely by the indictment. Notice can be based on the indictment plus the language of the relevant statute. Notice can be based on the indictment plus the relatively new criminal discovery statutes. And the ultimate form of notice is the prosecution's evidence; we have held that if the defendant is genuinely surprised thereby, he is entitled to a continuance.

An exception to this trend is cases holding that facts that distinguish a felony from a misdemeanor must be specifically plead,[6] perhaps explainable on the grounds that if notice is to be accomplished by the indictment and the relevant statute, the indictment must allege enough to direct the defendant to the correct statute.

In light of these recent authorities, we conclude that ORS 132.550(7) does not require that extreme emotional disturbance be negated in a murder indictment, regardless of the label that can be most properly applied to that concept. Older cases, relied upon by both parties here, either were based upon statutes no longer in effect or were based on common law rules that are irrelevant because of ORS 132.510.[7]

(2) Pretrial notice.

When extreme emotional disturbance was added to the Oregon homicide statutes in 1971, the legislature also enacted ORS 163.135, requiring the defense to give pretrial notice of intent to rely on that issue. Specifically, ORS 163.135(1) provides:

"The defendant shall not introduce in his case in chief

---

[6] *State v. Dechand,* 13 Or App 530, 511 P2d 430 (1973); *State v. Bettin/English/Remling,* 10 Or App 230, 498 P2d 382, Sup Ct *review denied* (1972).

[7] One apparent anomaly in recent cases involving the required specificity in indictments is *State v. Bobkiewicz,* 20 Or App 479, 532 P2d 256, Sup Ct *review denied* (1975). This decision has been disapproved by the Supreme Court in another context, *State v. Washington,* 273 Or 829, 543 P2d 1058 (1975), and, to the extent inconsistent with the views expressed herein, is disapproved by this court.

expert testimony regarding extreme mental or emotional disturbance *under ORS 163.125* unless he gives notice of his intent to do so." (Emphasis supplied.)

The cross-referenced statute, ORS 163.125, contained the extreme-emotional-disturbance language as part of the definition of manslaughter between 1971 and 1975. However, under the Oregon Laws 1975, ch 577 amendments, the extreme-emotional-disturbance language has now been moved to the definition of murder in ORS 163.115. Therefore, the notice statute, ORS 163.135, now makes no sense if applied literally. We assume, but need not here decide, that this was an obvious legislative oversight, and ORS 163.135 should now be read as cross-referencing ORS 163.115, not ORS 163.125.

The consensus in the opinions in this court in *McCoy* was that extreme emotional disturbance is a "defense." But as the term "defense" is technically used in Oregon criminal procedure, the state is required to negate a "defense" if the defendant gives pretrial notice of reliance thereon. ORS 161.055(3). It follows that if extreme emotional disturbance is labeled a "defense" in this technical sense, the issue can be raised in every murder trial simply by the defense's filing notice, ORS 163.135 and 161.055(3), that it is an issue.

We conclude that the legislature could not have intended such a result. When a murder prosecution is initiated, the state is entitled to rely on the presumptions that the defendant is sane and intended the ordinary consequences of his acts. ORS 41.360(2); *Mullaney v. Wilbur,* supra, 44 L Ed 2d at 522, n 31. While presumptions can evaporate in the face of contrary evidence, we know of no situation where a presumption evaporates in the face of litigant's notice that it should do so.

Therefore, *McCoy* is disapproved to the extent that anything therein can be read as holding extreme emotional disturbance is a "defense," in the technical ORS

161.055(3)-sense of that term, that is raised simply by a defendant's pretrial notice.

(3) The evidence.

■ We hold that extreme emotional disturbance becomes an issue in a murder prosecution when there is evidence at trial that raises it. This can be either the state's evidence or the defendant's. *Cf. State v. Washington,* 273 Or 829, 543 P2d 1058 (1975):

> "The single limitation on the right of either the prosecution or the defendant to request lesser included offense instructions under these statutes is that there must be evidence, or an inference which can be drawn from the evidence, which supports the requested instruction so that the jury could rationally and consistently find the defendant guilty of the lesser offense and innocent of the greater * * *." 273 Or at 836.

Again returning to ORS 161.055(3), under that statute evidence would have to be produced during the defendant's case to raise extreme emotional disturbance, if that issue were a "defense" in the technical sense. However, the facts in *Mullaney v. Wilbur,* supra, illustrate why ORS 161.055(3) cannot possibly be applicable. There the prosecution's evidence consisted of the defendant's confession that he had killed the victim in a frenzy provoked by the victim's homosexual advances. In Oregon this would be sufficient evidence to raise the extreme-emotional-disturbance issue. But it was introduced in the state's case in *Mullaney;* the defendant there presented no evidence. If ORS 161.055(3) were applied literally to such facts, the state would not be required to negate extreme emotional disturbance because there was no "affirmative evidence by a defense witness in the defendant's case in chief." This result would be illogical, and at least arguably unconstitutional under *Mullaney.*

■ In summary, we believe the ultimate defect with both parties' argument here is the relentless quest for

a label to be attached to the extreme-emotional-disturbance issue; shall it be classified as an exception, a defense, an affirmative defense, etc.? We conclude that the extreme-emotional-disturbance issue is a square peg that will not fit into any of the round holes of the suggested labels. Although extreme emotional disturbance is most similar to a defense, we conclude that actually it is *sui generis,* that is, unique among the issues that can arise in a criminal trial. It is an issue that cannot and need not be raised by the pleadings. It is an issue that cannot be raised merely by pretrial notice. It is an issue that can be raised by any evidence at trial, either the state's or the defendant's.

Reversed and remanded.