Argued and submitted January 26, reversed and remanded for new trial May 4, reconsideration denied July 16, petition for review allowed August 4, 1981 (291 Or 419)

**STATE OF OREGON,**
*Respondent,*

*v.*

**FRANK WESLEY CARSON,**
*Appellant.*

(No. 115,743, CA 17606)

627 P2d 514

James J. Susee, Salem, argued the cause and filed the brief for appellant.

Jan P. Londahl, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were James

M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

ROBERTS, J.

## ROBERTS, J.

Defendant was convicted by jury verdict of attempted manslaughter in the first degree and ex-convict in possession of a firearm. In this appeal defendant seeks reversal of the attempted manslaughter conviction.[1] We reverse.

The facts are as follows: Defendant, while living in Gates, Oregon, became acquainted with a man whom he knew as Dick Colletti, who had moved into the motel/trailer park where defendant was living. "Colletti" was actually an Oregon State Police Officer named Richard Tenderella, working in an undercover capacity to investigate burglaries in which defendant and his brother Russell were apparently suspects. On the day in question, Tenderella, the Carson brothers, Russell's wife and another woman were sitting outside defendant's trailer drinking beer and talking. Tenderella had earlier been shooting a .38 caliber handgun in the nearby woods, and talk turned to trading for the .38. Tenderella went to his car for the gun and unloaded it, placing some shells in his pocket. In the small of his back, under his shirt, he placed a loaded .45 automatic handgun. Returning to the group, he handed the .38 to defendant, who fired it twice. Then, according to defendant's story, because he was afraid of the officer's "drunken behavior," defendant slipped into his trailer when Tenderella was not looking and hid the gun in a drawer.

As talk of the gun trade progressed, defendant took the officer into the trailer and showed him shotguns. Tenderella refused a trade for the shotguns, saying he wanted a handgun. The two then went back outside and rejoined the others. Tenderella demanded the return of his gun. After repeated demands, according to defendant, Tenderella jumped up, pulled out the .45 caliber gun and fired two shots. Defendant ran into the trailer. He said he looked out and saw Tenderella holding Russell at gunpoint. At some point early in the confrontation, and after Tenderella drew his gun, defendant claimed he threw the .38 out the door. Tenderella did not leave. Inside the trailer, defendant

---

[1] Defendant's conviction for the offense of ex-convict in possession of a firearm is not in issue here.

loaded one of the shotguns and fired a shot, which he said he hoped would frighten Tenderella, who had threatened all their lives, into leaving. The two men exchanged several shots. Tenderella alleged one of defendant's shots missed his head by about 18 inches. No one was injured.

At trial, defendant objected to the following instruction given by the court:

"As to the charge of Attempted Murder, you are to consider this summary in light of all the other instructions given you: If you find from the evidence and beyond a reasonable doubt that (1) the defendant Frank Wesley Carson, (2) on or about the 23rd day of August, 1979, (3) within Marion County, Oregon, (4) did unlawfully and intentionally attempt to cause the death of a human being, Richard W. Tenderella, by shooting at him with a shotgun, (5) while not under the influence of an extreme emotional disturbance, then the Defendant is guilty of the crime of Attempted Murder, and you should return a verdict of 'guilty' against him for that crime."[2]

The court then went on to instruct the jury on the crime of attempted manslaughter in the first degree, the crime of which defendant was convicted:

"If you do not find from the evidence and beyond a reasonable doubt that the defendant committed all of the elements of the crime of Attempted Murder, but you do find beyond a reasonable doubt that: (1) the defendant Frank Wesley Carson, (2) on or about the 23rd day of August, 1979, (3) within Marion County, Oregon, (4) unlawfully and intentionally attempted to cause the death of a human being, Richard W. Tenderalla, by shooting at him with a shotgun, (5) at the time of the commission of the crime the defendant was under extreme emotional disturbance; and that the emotional disturbance was not caused by an intentional, knowing, reckless, or criminally negligent act of the defendant; and there was a reasonable explanation for the extreme emotional disturbance. Then if you find all of the elements, the defendant is guilty of the crime of Attempted Manslaughter in the First Degree, and you should return a verdict of 'guilty' against him for that crime."

---

[2] Because defendant was not convicted of attempted murder, and because his objections on this point are the same ones raised in his challenge to the instruction on attempted manslaughter, there is no need to discuss the objections to the attempted murder instruction separately.

■　　　Defendant objected to the instruction on attempted manslaughter because he contended that "extreme emotional disturbance" is intended only to serve as a mitigating factor in sentencing for murder and not as an element of any crime.[3] We decided extreme emotional disturbance is an element of manslaughter in *State v. Keys,* 25 Or App 15, 548 P2d 205 (1976):

> "We deduce from the legislative history that the new first-degree manslaughter offense ("intentionally under circumstances not constituting murder") means intentionally under extreme emotional disturbance. Thus the sole distinction between murder, ORS 163.115(1)(a), and first-degree manslaughter, ORS 163.118(1)(b), is the presence or absence of extreme emotional disturbance." (Footnote omitted.) 25 Or App at 19; *see also* n. 4 at 19.

Of course, defendant was only convicted of *attempted* manslaughter. "Attempt" is defined at ORS 161.405: "A person is guilty of an attempt to commit a crime when he intentionally engages in conduct which constitutes a substantial step toward commission of the crime." Attempted manslaughter in the first degree thus may be committed by an intentional step toward the commission of criminal homicide while under extreme emotional disturbance. From the foregoing an instruction on extreme emotional disturbance may be given in an attempted manslaughter charge.[4]

---

[3] Defendant stated his objection as follows:

"I take exception to the instruction on Attempted Manslaughter. First of all, I 'm not sure there is such a crime. I object to the fourth element you gave which said, 'Unlawfully and intentionally attempting to cause the death of another human being.' I believe that 'recklessly' should be added between intentionally and attempted. I believe that after the words, 'by shooting him with a shotgun' should be added, 'under the circumstances, manifesting an extreme indifference to the value of human life.' I take exception to it because first of all, I don't believe there is such a thing as Attempted Manslaughter. I also object to the fifth element which you gave which has to do with under the influence of extreme emotional disturbance in its entirety. I object to this element because here again it's not a defense raised by the Defendant and there was no evidence of extreme emotional disturbance."

[4] *Keys* also decided another issue raised by defendant: whether extreme emotional disturbance must be raised first as a defense before a jury instruction as to its presence may be given. *Keys* states specifically that extreme emotional disturbance is an issue that need not be raised as a defense beforehand, but may be raised by any evidence at trial, whether the state's or the defendant's. 25 Or App at 24, 25.

Finally, defendant argues that there was insufficient evidence to justify a jury instruction on the existence of an extreme emotional disturbance in this case. We agree.

█ The only evidence supporting the instruction of extreme emotional disturbance is defendant's testimony that at the time the shooting incident occurred he was "scared," "amazed," and "taken aback." The judge's instruction to the jury was:

"[T]here are varying degrees of emotional disturbance. Not every disturbance is an extreme emotional disturbance under the law. In determining what the term 'extreme' means with reference to extreme emotional disturbance, I instruct you that the term means the outermost or furthest, most remote in any direction, final, or last."

We cannot accept the proposition that emotions described as "scared," "amazed," and "taken aback," emotions which persons may experience regularly in their daily affairs, are "extreme" emotions. The instruction should not have been given.

Because of our disposition of this case we do not consider defendant's other assignment of error.

Reversed and remanded for a new trial.